**SZABO FOOD SERVICE, INC., et al., Plaintiffs-Appellees,**

v.

**CANTEEN CORPORATION, Defendant-Appellant.**

No. 86–3093.

United States Court of Appeals, Seventh Circuit.

Argued April 21, 1987.

Decided June 29, 1987.

Rehearing and Rehearing En Banc Denied Aug. 25, 1987.

---

James A. Hardgrove, Sidley & Austin, Chicago, Ill., for defendant-appellant.

Francis J. Higgins, Bell, Boyd & Lloyd, Chicago, Ill., for plaintiffs-appellees.

Before CUDAHY, POSNER and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Twice in recent months we have encountered cases in which district judges denied substantial motions for sanctions without giving reasons. Twice we have remanded for more complete consideration. *Shrock v. Altru Nurses Registry*, 810 F.2d 658 (7th Cir.1987); *Dreis & Krump Manufacturing Co. v. Machinists & Aerospace Workers*, 802 F.2d 247 (7th Cir.1986). We follow the same course today. See also *Thomas v. Capital Security Services, Inc.*, 812 F.2d 984, 989 (5th Cir.1987); *Jackman v. WMAC Investment Corp.*, 809 F.2d 377, 384 (7th Cir.1987); *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 157–58 (3d Cir. 1986).

## I

The substantive dispute concerns a contract to supply food at the Cook County Jail. Szabo Food Service, Inc., a caterer with more than $200 million in annual sales, held the contract between 1978 and November 1986. The next term was put up for bids. Cook County has an ordinance calling for 30% of all contract work to be awarded to firms owned by members of certain minority groups and women. Rather than take a chance on being in the 70%, Szabo formed a joint venture with Catfish Digby's, Inc., a successful restaurant chain owned by black entrepreneurs. The principal competing bid came from Canteen Corp., another substantial caterer. Canteen bid on its own behalf, although it claimed that it would subcontract some work, including the recruiting of employees, to minority firms. Canteen's bid was lower by more than $1 million, although the Szabo-Digby joint venture excelled on other specifications, such as plans for dealing with riots. An evaluation committee rated the Szabo-Digby bid superior, but on October 6, 1986, the County Board awarded the contract to Canteen.

On Tuesday, October 14, the joint venture and its venturers (collectively Szabo-Digby) filed a 30–page complaint in the district court against Canteen, the Board, all of the Board's members, Cook County, and the County's purchasing agent. The complaint asserted that Szabo-Digby was the victim of racial discrimination, that the procedures used to award the contract to Canteen violated the due process clause of the fourteenth amendment, and that the Board had violated state law; the complaint invoked the district court's pendent jurisdiction to support the latter claims. Szabo-Digby obtained a hearing at 4:00; at the hearing it moved for a temporary restraining order. The district judge denied the motion on the ground that any injury appeared to be reparable by money damages; nonetheless, Szabo-Digby requested expedition, leading the judge to order Canteen to file within 72 hours its papers and supporting materials in opposition to Sza-

bo-Digby's request for a preliminary injunction. As Canteen tells the tale, there followed round-the-clock preparation of the background materials and briefs necessary to oppose Szabo-Digby's request for emergency relief.

Canteen's papers were due by 4:30 p.m. on Friday, October 17. At 1:15 that day Szabo-Digby served a notice of voluntary dismissal under Fed.R.Civ.P. 41(a)(1)(i). The notice ended the case without intervention by the court, see *Scam Instrument Corp. v. Control Data Corp.*, 458 F.2d 885, 888 (7th Cir.1972), and Canteen therefore did not file its papers. Szabo-Digby moved across the street to the Circuit Court of Cook County, where it filed a suit based wholly on state and local law. Discovery was had; the Circuit Court entered judgment in favor of Canteen; the case is on appeal.

Canteen says that during the discovery in the state suit it became convinced that Szabo-Digby had filed the federal suit either knowing that it could not prevail or without performing the pre-filing investigation required by Fed.R.Civ.P. 11. Canteen concluded that Szabo-Digby knew or should have discovered that Canteen, too, had a minority participant. That squelched any inference of racial discrimination, according to Canteen, even any inference that the County Board had been indifferent to its minority set-aside ordinance. On November 14 Canteen filed a motion asking the district court to award it attorneys' fees as a sanction under Rule 11; it also sought fees as a "prevailing party" under 42 U.S.C. § 1988. The parties appeared before the district judge on November 21. Canteen offered to file a brief and supporting papers by November 24. Szabo-Digby asked for time to respond. Instead of setting a briefing schedule, however, the district court announced:

> I have reviewed the motion. I am well aware of the case. I reviewed the materials that were previously filed in connection with the case.
>
> I don't believe, under the circumstances of the case, that a Rule 11 violation has occurred, nor do I believe that Sec-

tion 1988 fees should be awarded, and so the motion, upon my review of the entire record in this case, is denied.

The "entire record in this case" was Szabo-Digby's complaint and attachments, and Canteen's skeletal motion for fees. Canteen had not yet filed either the papers it had prepared in response to the complaint or the materials from the state proceedings it planned to use in support of its request for sanctions.

## II

Szabo-Digby dismissed its complaint under Rule 41(a)(1)(i) and maintains that the dismissal deprived the district court of "jurisdiction" to award attorneys' fees against it. *Santiago v. Victim Services Agency*, 753 F.2d 219 (2d Cir.1985), offers comfort to that position. Santiago filed and then dismissed a complaint under 42 U.S.C. § 1983; after the Rule 41(a)(1)(i) dismissal, the defendants requested and received an award of fees under § 1988; the court of appeals reversed, stating that "[o]nce the plaintiff has dismissed the action under [Rule 41(a)(1)(i) ], the court loses all jurisdiction over the action." 753 F.2d at 221. The Second Circuit reasoned that because the court lost "jurisdiction" it could not award fees. *Id.* at 221–23. *Williams v. Ezell*, 531 F.2d 1261, 1263–64 (5th Cir.1976), contains similar language and comes to the same conclusion. *Corcoran v. Columbia Broadcasting System, Inc.*, 121 F.2d 575 (9th Cir.1941), which neither *Santiago* nor *Williams* cited, had come to the opposite conclusion on a request for fees under the copyright laws.

We agree with *Santiago*'s holding, although as we explain below we do not endorse its reasoning. *Santiago*'s holding dooms Canteen's request for fees under § 1988. That statute authorizes awards to "prevailing" parties only. A dismissal without prejudice under Rule 41(a)(1)(i) does not decide the case on the merits. The plaintiff may refile the complaint (or, as Szabo-Digby did here, file a redacted complaint in a different court). The defendant remains at risk. A dismissal under Rule 41(a) is unlike a dismissal with preju-

dice under Rule 41(b), which enables the defendant to say that he has "prevailed". A cave-in by the defendant may support an award of fees to the plaintiff without a judicial declaration of entitlement to relief, see *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980); *Palmer v. City of Chicago*, 806 F.2d 1316, 1321–22 (7th Cir.1986). Capitulation or settlement is the practical equivalent of success. Surrender by the plaintiff should be treated similarly. Because the Rule 41(a)(1)(i) dismissal is without prejudice, however, it is not the practical equivalent of a victory for defendant on the merits.

■ On top of that, Rule 41(a)(1)(i) prevents an award of "costs" against the party who dismisses the suit voluntarily. Only the filing of a second suit on the same claim allows the court to award the costs of the first case. See Rule 41(d); 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2375 (1971). Section 1988 authorizes an award "as part of the costs" of the action. The Supreme Court takes seriously the assimilation of attorneys' fees under § 1988 to "costs". *Marek v. Chesny*, 473 U.S. 1, 7–11, 105 S.Ct. 3012, 3016–18, 87 L.Ed.2d 1 (1985). Because the court may not award "costs" the first time the plaintiff drops his suit under Rule 41(a)(1)(i), it also may not award attorneys' fees under a statute that treats fees as part of "costs".

■ The court's inability to award fees under § 1988 does not imply the same treatment of its authority under Rule 11. Neither "prevailing" on the merits nor an entitlement to "costs" is a necessary condition of a Rule 11 award. Rule 11 is designed to discourage unnecessary complaints and other filings, for the benefit of the judicial system as much as of the defendants. See *Brown v. National Board of Medical Examiners*, 800 F.2d 168 (7th Cir.1986); cf. *Weinstein v. University of Illinois*, 811 F.2d 1091, 1097–98 (7th Cir. 1987). See also *Unioil, Inc. v. E.F. Hutton & Co.*, 809 F.2d 548, 557–59 (9th Cir. 1986); *Westmoreland v. CBS, Inc.*, 770 F.2d 1168 (D.C.Cir.1985); *Eastway Construction Corp. v. City of New York*, 762

F.2d 243 (2d Cir.1985); *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 809 F.2d 584, 586–89 (9th Cir.1987) (Noonan, J., dissenting from the denial of rehearing en banc). Unnecessary complaints sap the time of judges, forcing parties with substantial disputes to wait in a longer queue and condemning them to receive less judicial attention when their cases finally are heard. Rule 11 fees may be awarded even *against* prevailing parties, as in *Westmoreland*. The violation of Rule 11 is complete when the paper is filed. *Pantry Queen Foods, Inc. v. Lifschultz Fast Freight, Inc.*, 809 F.2d 451, 453–54 (7th Cir.1987). Otherwise splendid conduct of the litigation does not excuse an established violation. This implies that a court always should be able to award fees, whether the plaintiff wins, loses on the merits, or dismisses his own case. Szabo-Digby took up the court's time on very short notice and received a decision on a request for a TRO; it demanded that Canteen expedite the filing of its papers; if it should not have filed the complaint at all, it has inflicted on both Canteen and the court the sort of injury with which Rule 11 is concerned.

■ Yet it is not easy to distinguish *Santiago* on these grounds. The Second Circuit did not rely on the considerations particular to § 1988 that we have discussed. It said only that the court lacks "jurisdiction", implying that the district judge could not have awarded fees under *any* statute or rule. To the extent the Second Circuit believes that a dismissal under Rule 41(a)(1)(i) deprives the court of power to do anything at all, we agree with the Ninth Circuit's contrary view in *Corcoran*. "Jurisdiction" is an all-purpose word denoting adjudicatory power. A court may have power to do some things but not others, and the use of "lack of jurisdiction" to describe the things it may not do does not mean that the court is out of business.

There are at least three ways in which a court may use "lack of jurisdiction" to describe the effect of a motion under Rule 41(a)(1)(i). First, it may mean to invoke the image of subject matter jurisdiction. If

one citizen of Illinois files a suit based on state law against another citizen of Illinois, a federal court lacks jurisdiction over the subject matter; so too if a plaintiff files a specious civil rights suit, for an absurd complaint does not even invoke federal question jurisdiction. *Hagans v. Lavine*, 415 U.S. 528, 537, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974); *Cronson v. Clark*, 810 F.2d 662, 665 (7th Cir.1987); *Dozier v. Loop College*, 776 F.2d 752, 753 (7th Cir. 1985). Yet a court has jurisdiction to determine its jurisdiction and therefore may engage in all the usual judicial acts, even though it has no power to decide the case on the merits. It may supervise discovery, hold a trial, and order the payment of costs at the end. If the complaint is indeed too silly to create subject matter jurisdiction, attorneys' fees should be an ordinary incident of the award of costs. See *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980), holding that a court has power to award attorneys' fees to discourage vexatious litigation; *In re TCI Ltd.*, 769 F.2d 441 (7th Cir.1985).

The second sense of "lack of jurisdiction" is that the judge has lost his power to proceed, even though the case is within the federal judicial power. For example, a judge who enters a final judgment loses "jurisdiction" to hold another trial (unless on a timely motion under Rule 52, 59 or 60), see *Bailey v. Sharp*, 782 F.2d 1366 (7th Cir.1986). Once the losing party files a valid appeal from the final decision, the district judge loses "jurisdiction"—though only on the merits, because awards of fees are collateral questions. *Exchange National Bank v. Daniels*, 763 F.2d 286 (7th Cir.1985); *Patzer v. Board of Regents*, 763 F.2d 851, 858–59 (7th Cir.1985). This comes closer to the sense in which a dismissal under Rule 41(a)(1)(i) strips a court of "jurisdiction". The dismissal terminates the case all by itself. There is nothing left to adjudicate. So several courts, including this one, have held that a judge may not reject the Rule 41(a)(1)(i) notice and then decide the case on the merits; one disposition is enough! See *Winterland Concessions Co. v. Smith*, 706 F.2d 793 (7th Cir. 1983); *Williams*, 531 F.2d at 1263–64;

*Bryan v. Smith*, 174 F.2d 212 (7th Cir. 1949). But see *Harvey Aluminum, Inc. v. American Cyanamid Co.*, 203 F.2d 105 (2d Cir.1953) (court may reject a Rule 41(a)(1) dismissal when there have been substantial proceedings looking to a decision on the merits). In *Bryan* the parties stipulated to interim relief pending disposition; the plaintiff later dismissed the case under Rule 41(a)(1), and we held that the district judge could not enforce the stipulation. The Second Circuit's opinion in *Santiago* used some of these cases as the basis of its "jurisdictional" language, yet it does not take much argument to show that the situations are distinct. A district court that loses its power to decide the merits—perhaps because it has decided them once already—does not also lose power to award attorneys' fees that may be in order as a result of what happened before the final decision.

Still a third "jurisdictional" analogy rests on the case or controversy requirement of Article III. You can't have a suit without a plaintiff. When the plaintiff packs up his portfolio and goes home, the case goes home with him. There is no longer a dispute for the court to decide. This is so whether the dismissal comes under Rule 41(a) without prejudice or Rule 41(b) with prejudice; in either event, the absence of a plaintiff ends the court's power. See *In re International Business Machines Corp.*, 687 F.2d 591 (2d Cir.1982). Courts occasionally sum up the effect of the missing plaintiff by stating, as we did in *Bryan*, 174 F.2d at 214: "It is as if the suit had never been brought." A court could not award attorneys' fees in a case that had never begun, so if this analogy prevails Canteen loses.

You can get only so far with the comparison to a suit never filed, however. Suppose the plaintiff files suit and pays the filing fee with a rubber check, then orders a transcript of some preliminary proceedings (such as the hearing on a TRO in this case), and dismisses under Rule 41(a)(1)(i). Does the plaintiff avoid paying the docket fee and the court reporter on the ground that "[i]t is as if the suit had never been

brought"? Neither filing fees nor reporters need be paid when suit is never filed, yet the plaintiff must pay up nonetheless. Suppose the plaintiff files a suit, seeks a TRO, in the midst of the hearing asks to approach the bench, emits a Bronx cheer, punches the judge in the nose, and as the judge reaches for a handkerchief to stanch the bleeding tenders a dismissal under Rule 41(a)(1)(i). In reply to the inevitable citation for contempt of court, the plaintiff could not say: "I wasn't there in the eye (nose?) of the law; nothing happened for which I am responsible; for 'it is as if the suit had never been brought'."

An award of fees under Rule 11 is more like a sanction for contempt of court than like a disposition on the merits or even an award of costs. An award under Rule 11 is a "sanction" for violating a rule of court. The obligation to answer for one's act accompanies the act; a lawyer cannot absolve himself of responsibility by dismissing his client's suit. A dismissal under Rule 41(a)(1)(i) is significant to the extent it stops the running of attorneys' fees. A plaintiff who files a complaint in violation of the Rule and quickly dismisses it usually will find that sanctions are minimal. But they are not zero—and here they may not be minimal. Round-the-clock work by a large law firm does not come cheap. If Szabo-Digby imposed costs on its adversary and the judicial system by violating Rule 11, it must expect to pay.

## III

Szabo-Digby maintains that Canteen is responsible for the thin record. If Canteen wanted the district judge to look at evidence suggesting misconduct, Szabo-Digby says, why didn't it furnish the evidence to the judge? It could have attached supporting materials and a brief to its motion for sanctions. It did not and has only itself to blame for its predicament, Szabo-Digby concludes. Szabo-Digby relies on Local Rule 13(a), which, it insists, requires a moving party to submit briefs and supporting materials no later than five days after the motion. Canteen replies that the district court's rules do not require a moving party

to submit evidentiary materials with or after the motion; Rule 13(a) says only that a party shall file "a short concise memorandum in support of his/her position, together with citations of authority." Because the time specified by Local Rule 13(a) is five days, moreover, weekends and holidays are excluded, see Fed.R.Civ.P. 6(a), so that "five days" is at least seven calendar days. The district judge denied the motion before the end of the seventh day. Canteen tops off its position by observing that although it filed the motion on November 14, the parties did not stipulate until November 17 to the accuracy of the state court transcript on which Canteen intends to rely.

Szabo-Digby did not oppose the motion in the district court on account of a documentary shortfall; the district judge decided the motion on the merits rather than citing Local Rule 13(a); so far as we can tell on an independent review, Canteen did not violate the Rule and had a decent (which is not to say smashing) reason for wanting a little more time. We do not preclude the district court from interpreting and applying its local rule on remand, but we also do not think the rule a sufficient alternative ground on which to affirm the judgment.

There is a related timeliness concern: Szabo-Digby dismissed the case on October 17, but Canteen did not request fees until November 14. Neither the district judge nor Szabo-Digby suggests that 28 days is too long. The Supreme Court held in *White v. New Hampshire Department of Employment Security*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982), that motions for attorneys' fees under § 1988 are not requests to "alter or amend" the judgment and therefore are not governed by the ten-day limit in Fed.R.Civ.P. 6(b) and 59(b). The Court did not say just what time rules do apply; it both invited district courts to adopt local rules (455 U.S. at 454 n. 16, 102 S.Ct. at 1168 n. 16) and reserved judgment on the possibility that the time limit might be that applicable to bills of costs (*id.* at 454 n. 17). Several courts have taken the latter suggestion seriously, holding motions to the time within which the party could seek costs. E.g., *Mont-*

*gomery & Associates, Inc. v. CFTC,* 816 F.2d 783 (D.C.Cir.1987). This is more appropriate for fees awarded as "part of costs" than for fees under Rule 11, which are awarded as "sanctions". The local rules in the Northern District of Illinois give parties 30 days to file bills of costs (Local Rule 45(a)) and 90 days to file requests for attorneys' fees (Local Rule 46). If the request for sanctions under Rule 11 is assimilated to either category, it is timely.

## IV

Szabo-Digby's complaint contained three kinds of claims: that the Board engaged in racial discrimination, that the Board violated the due process clause, and that the Board violated state and local laws. We are concerned with the first two, because if the complaint offended Rule 11 in order to obtain federal-question jurisdiction, the sufficiency of the state claims is irrelevant.

Rule 11 provides that the presence of an attorney's signature on a complaint is a certificate that

he has read the pleading ...; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause any unnecessary delay or needless increase in the cost of litigation.

The Rule contains several strands. There must be "reasonable inquiry" into both fact and law; there must be good faith (that is, the paper may not be interposed "to harass"); the legal theory must be objectively "warranted by existing law or a good faith argument" for the modification of existing law; and the lawyer must believe that the complaint is "well grounded in fact". The attorney filing the complaint or other paper must satisfy all four requirements. Szabo-Digby does not argue for the modification of existing law, and its brief in this court contends that the complaint is adequately supported by fact and law. The due pro-

cess branch of the complaint is not. Szabo-Digby's theory of due process is wacky, sanctionably so.

■■■ The due process clause of the fourteenth amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law". Szabo-Digby does not say that it has been deprived of "life" or "liberty". It has not been deprived of "property" either. Its right to perform food services under the contract, a "property" interest, expired. A person has a "property" interest in an expectation of renewal only if state law so provides. Compare *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), with *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). A unilateral expectation of renewal is not a property interest. Only a "legitimate claim of entitlement", *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709, an "expectancy ... that [is] legally enforceable", *O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 788 n. 21, 100 S.Ct. 2467, 2477 n. 21, 65 L.Ed.2d 506 (1980), is property. See also *Miller v. Henman,* 804 F.2d 421 (7th Cir.1986) (collecting cases). Szabo-Digby did not have such a claim of entitlement. The invitation to bid on the food service contract for the jail specified that the County "reserves the right to accept or reject any or all proposals and to negotiate with any qualified source or to cancel in part or in its entirety this Request for Proposal. It may accept the proposal that it considers to be in the best interest of the County." The Supreme Court of Illinois has held that when a request for bids contains language of this sort, no one has an entitlement to receive the contract— even if he submits the lowest bid for the best product. See *Polyvend, Inc. v. Puckorius,* 77 Ill.2d 287, 294–96, 32 Ill.Dec. 872, 395 N.E.2d 1376, 1379 (1979), appeal dismissed for want of a substantial federal question, 444 U.S. 1062, 100 S.Ct. 1001, 62 L.Ed.2d 744 (1980). We accordingly concluded that a disappointed bidder for a contract in Illinois lacks a property interest. *Coyne-Delany Co. v. Capital Development Board,* 616 F.2d 341 (7th Cir.1980). Szabo-Digby's briefs, its defense of the

complaint, do not quote the language of the invitation. They do not even cite *Polyvend,* which is an authoritative decision by the Supreme Court of Illinois on the state law issues and the Supreme Court of the United States on the federal question. See *Mandel v. Bradley,* 432 U.S. 173, 176–77, 97 S.Ct. 2238, 2240–41, 53 L.Ed.2d 199 (1977).

Szabo-Digby tries to get around its lack of a property interest—as well as the fact that it got oodles of process and is getting more in the state courts—by insisting that it did not get *all* the process to which it is entitled under state law. Now one would think that a claim of unauthorized departure from procedure established by state law is exactly what the state courts are for. See *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Hudson v. Palmer,* 468 U.S. 517, 530–36, 104 S.Ct. 3194, 3202–05, 82 L.Ed.2d 393 (1984); *Gumz v. Morrissette,* 772 F.2d 1395, 1403–04 (7th Cir.1985). Szabo-Digby insists, however, that it has a property interest in the observance of the procedures themselves. To quote its brief: "[P]laintiffs demonstrated that they had been deprived of a substantive constitutional right, *i.e.,* the right to be free from having established bidding procedures applied in an arbitrary and capricious manner." This is the argument that induced us to impose sanctions on our own initiative in *Weinstein,* 811 F.2d at 1097–98. See also, e.g., *Kasper v. Board of Election Commissioners,* 814 F.2d 332, 342 (7th Cir.1987); *Gramenos v. Jewel Companies, Inc.,* 797 F.2d 432, 434–35 (7th Cir.1986). The Supreme Court has held, in cases Szabo-Digby does not cite, that the due process clause does not require states to follow their own procedures, if there is no underlying property interest. *Olim v. Wakinekona,* 461 U.S. 238, 248–51, 103 S.Ct. 1741, 1746–48, 75 L.Ed.2d 813 (1983); *Hewitt v. Helms,* 459 U.S. 460, 471, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). See also, e.g., *Schwartz v. Mayor's Committee on the Judiciary,* 816 F.2d 54, 57–58 (2d Cir.1987). Perhaps Szabo-Digby means by "arbitrary and capricious" that the County Board was wrong on the merits: that it "deserved"

the contract. But then it runs smack into *Bishop v. Wood,* 426 U.S. 341, 349–50, 96 S.Ct. 2074, 2079–80, 48 L.Ed.2d 684 (1976), which holds that when there is no substantive property interest there is no review of "the merits" under the due process clause. Even when there is a property interest, the decision may be unreviewable, see *University of Michigan v. Ewing,* 474 U.S. 214, 106 S.Ct. 507, 512, 88 L.Ed.2d 523 (1985) (reserving the issue). And if there were review by a federal court, Szabo-Digby could not prevail even so: it is not arbitrary to award a contract to the low bidder.

█ If Szabo-Digby were trying to get the Supreme Court to reconsider *Olim* or *Bishop* we would not be keen to impose sanctions; a party is free to ask for reconsideration even when the court is unlikely to respond favorably. But this was not Szabo-Digby's strategy. It ignored *Bishop, Olim,* and the wealth of cases in this circuit holding that the Constitution does not guarantee that states will follow their own law. It ignored the language of the Board's invitation to bid. It ignored *Polyvend.* It relied almost entirely on a pre-*Olim* opinion of a district court in Pennsylvania and on a more recent decision of the Eighth Circuit that assumed a position like Szabo-Digby's arguendo on the way to deciding the case for defendants on the merits. *L & H Sanitation, Inc. v. Lake City Sanitation, Inc.,* 769 F.2d 517, 523–24 (8th Cir.1985); *Three Rivers Cablevision, Inc. v. City of Pittsburgh,* 502 F.Supp. 1118 (W.D.Pa.1980). Szabo-Digby's ability to find obscure cases such as *Three Rivers* suggests that its presentation of the due process issue does not suffer from want of time to track down citations. What it does suffer from is "[t]he ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist". *Hill v. Norfolk & Western Ry.,* 814 F.2d 1192, 1198 (7th Cir.1987); see also *Bonds v. Coca-Cola Co.,* 806 F.2d 1324, 1328 (7th Cir.1986).

We have paid close attention to the argument in Szabo-Digby's brief not because Rule 11 requires scholarly exposition or exhaustive research—it does not—but be-

cause a court must take care not to penalize arguments for legal evolution. The meaning of the due process clause has undergone rapid change; what a district court could state with confidence in *Three Rivers* in 1980 was washed away by the Supreme Court in *Olim* in 1983. The complaint need not and should not contain citations or legal argument. To find out whether it was the opening shot in a campaign for some new legal principle, a court must examine what the lawyers later say about their work. Rule 11 creates difficulties by simultaneously requiring courts to penalize frivolous suits and protecting complaints that, although not supported by existing law, are bona fide efforts to change the law. The only way to find out whether a complaint is an effort to change the law is to examine with care the arguments counsel later adduce. When counsel represent that something cleanly rejected by the Supreme Court is governing law, then it is appropriate to conclude that counsel are not engaged in trying to change the law; counsel either are trying to buffalo the court or have not done their homework. Either way, Rule 11 requires the court to impose a sanction—for the protection of the judicial process as much as to relieve the financial burden that baseless litigation imposes on the other side.

The due process argument in this case is frivolous on an objective standard; it is therefore not "warranted by existing law" within the meaning of Rule 11. See *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986). Counsel ignore rather than acknowledge the force of existing law, so this case cannot be called an effort to alter the law. The violation being established on the legal record, a hearing is unnecessary. *Hill*, 814 F.2d at 1200–03 (collecting cases). The Rule requires a sanction for every violation, see *Shrock*, 810 F.2d at 661, so (to use the Rule's word) the district court "shall" impose a sanction. We take Rule 11 and its counterpart Fed.R.App.P. 38 seriously and expect district judges, lawyers, and litigants to do the same. See also, e.g., *Bailey v. Bicknell Minerals, Inc.*, 819 F.2d 690 (7th Cir.1987), and the many citations in *Hill* and *Brown*.

## V

We come at last to Szabo-Digby's claim of racial discrimination. The claim is sufficient in form. The complaint alleges that Szabo-Digby has black participants; that Canteen does not; that Szabo-Digby made a "better" bid, but that Canteen got the contract. This states a prima facie case of racial discrimination, strengthened if the Board changed the rules (by increasing the importance of price), after the bids were in, so that it could award the contract to Canteen. Canteen responds by invoking three requirements of Rule 11. It maintains that the complaint (a) is not "well grounded in fact"; (b) was not backed up by the necessary "reasonable inquiry" into the facts before it was filed; and (c) was "interposed for [an] improper purpose, such as to harass or to cause any unnecessary delay" in the transition to a new vendor.

Each of Canteen's arguments has some plausibility. With respect to the complaint's being "well grounded in fact", Canteen insists that it had black co-venturers too, and that Szabo-Digby knew this. If each bidder had minority participants, the inference that a decision for one was based on hostility to the race of Szabo-Digby's venturers evaporates. With respect to the requirement of "reasonable inquiry" before filing the complaint, Canteen believes that Szabo-Digby performed none. And if these allegations are true—if Szabo-Digby filed its complaint in ignorance, or worse if Szabo-Digby knew that Canteen had black co-venturers—then it may be appropriate to infer that Szabo-Digby acted in bad faith, using the allegations of discrimination to stave off the inevitable. Perhaps Szabo-Digby was trying to impose on Canteen the costs of litigation, in the hope that Canteen would learn its lesson and not bid so aggressively the next time. This inference is supported by the fact that Szabo-Digby dropped the claim once it saw that it could not get a TRO—but only after waiting long enough to ensure that Canteen incurred all of the costs of responding to the motion. Arguments about "predatory litigation" are staples in antitrust law, see *Premier*

*Electrical Construction Co. v. National Electrical Contractors Association, Inc.,* 814 F.2d 358, 371–76 (7th Cir.1987) (collecting sources); Robert H. Bork, *The Antitrust Paradox* 347–64 (1978). Perhaps they have substance here too.

We cannot resolve the dispute between Canteen and Szabo-Digby on the existing record. Canteen has yet to supply what it believes is damning evidence. Szabo-Digby knew that Canteen was making some plans to involve black venturers, perhaps as subcontractors or recruiters; it relies on a legal opinion of the State's Attorney of Cook County that these people would not be "partners" or participants in a "joint venture" with Canteen. But this is not necessarily the right question. Partnership law may be pertinent to whether Canteen qualified as a "minority" bidder for purposes of the 30% set-aside, but it is not pertinent to a claim that the County Board discriminated *against* Szabo-Digby on account of race. And Szabo-Digby's statement that it relied on the State's Attorney's view is not a complete reply to the claim that it knew something the State's Attorney did not, or would have found it out had it done some investigation on its own. Inquiry would have led, Canteen insists, to a discovery that Canteen was as much a racially mixed co-venture as Szabo-Digby.

◼ The principal function of the 1983 amendment to Rule 11 was to add the requirement of adequate investigation before filing a complaint. It is not permissible to file suit and use discovery as the sole means of finding out whether you have a case. Discovery fills in the details, but you must have the outline of a claim at the beginning. Rule 11 requires independent inquiry. See *Brown* and e.g., *Rogers v. Lincoln Towing Service, Inc.,* 771 F.2d 194, 205 (7th Cir.1985). The amount of investigation required by Rule 11 depends on both the time available to investigate and on the probability that more investigation will turn up important evidence; the Rule does not require steps that are not cost-justified. Only a "reasonable" inquiry is necessary. See also *Pantry Queen,* 809 F.2d at 454. Inquiry that is unlikely to produce results is also unnecessary. *FDIC v. Elefant,* 790 F.2d 661, 667 (7th Cir.1986). How much inquiry would have been "reasonable" before filing this complaint is something we cannot determine. Neither could the district court, on the information available to it.

Much of Szabo-Digby's brief in this court is devoted to a demonstration that it had an objectively sufficient basis for its claim of racial discrimination. Perhaps it can persuade the district court that it did, but this is not enough. Because Rule 11 has a subjective component as well, the district court must find out why Szabo-Digby pursued this litigation. The Rule effectively picks up the torts of abuse of process (filing an objectively frivolous suit) and malicious prosecution (filing a colorable suit for the purpose of imposing expense on the defendant rather than for the purpose of winning). See *Hill,* 814 F.2d at 1202; *In re TCI,* 769 F.2d at 445–46; *Knorr Brake Corp. v. Harbil, Inc.,* 738 F.2d 223, 227–28 (7th Cir.1984).

In assessing both the objective and subjective components of Rule 11, the district judge will need to take into account the unusual cast this litigation has assumed. Ordinarily a plaintiff claims that his race was employed to his disadvantage. Much of Szabo-Digby's complaint—and Canteen's response—is a protest that the County Board failed to give a racial preference, and that failure to give a preference is "discrimination". According to Szabo-Digby, it is "black", Canteen is "white", and under the set-aside it is therefore entitled to the contract. The "violation" of the set-aside by the County Board, Szabo-Digby believes, is either the act of discrimination or the basis of an inference of discrimination. The claim that an award to a "white" corporation "violates" the ordinance is feeble. A set-aside program covers all contracts; it does not require that any particular contract be awarded to a minority bidder, or that any bidder be multi-racial. The Board could award 70% of all contracts to "white corporations" without raising problems under the ordinance. The arguments based on the set-aside program have led, however, to the curious allegation

by Canteen that "we're as black as you are" and the countercharge by Szabo-Digby that Canteen doesn't have "real" black co-venturers.

The way in which this argument proceeds weakens any claim by Szabo-Digby that it believed that it was the victim of discrimination against blacks. It saw Canteen scrambling to associate itself with blacks; apparently the staff of the County Board told Canteen that it could not expect to receive the contract until it did more on this score; Canteen then made a "better" proposal to the Board. The picture is of all competitors trying to darken the corporate color. This raises legal issues worlds apart from the simple prima facie case of discrimination that appeared in Szabo-Digby's complaint.

■ We cannot resolve Canteen's contention that it is entitled to sanctions under Rule 11 for the racial discrimination claim, but we can clear out of this case any argument that a failure to give Szabo-Digby a preference under the set-aside program is itself an act of racial discrimination or the basis of an adverse inference. Any constitutional claim runs the other way. Minority set-aside programs employ race as a ground of decision; any governmental program that hands out benefits on the basis of race receives the closest scrutiny. One set-aside program survived that scrutiny in the Supreme Court, see *Fullilove v. Klutznick*, 448 U.S. 448, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980), with the aid of Congress's special powers under § 5 of the fourteenth amendment and the short duration of the program. Other set-aside programs adopted by state and local governments, unlimited in time or with percentages not adequately justified, have been held unconstitutional. See *Associated General Contractors of California, Inc. v. San Francisco*, 813 F.2d 922, 928–42 (9th Cir.1987). See also Drew S. Days, *Fullilove*, 96 Yale L.J. 453 (1987). Szabo-Digby has not contended that Cook County's set-aside program is a necessary remedy for other violations of the Constitution. The failure to give a racial preference of dubious constitutionality cannot be the basis of a claim that the government is acting unconstitutionally.

The district court's abrupt dismissal of the Rule 11 motion before receiving evidence means that we cannot resolve the claim ourselves. Moreover, we cannot tell from the district judge's cryptic statement why he decided for Szabo-Digby. Perhaps he believed the record sufficient to show that Szabo-Digby had complied with Rule 11; perhaps he thought that pre-filing investigation and subjective intent were irrelevant if the complaint formally frames an acceptable legal theory; perhaps he believed that he had discretion to deny sanctions even if Szabo-Digby had violated the Rule; perhaps he believed that complaints filed under § 1983 are held to lower standards. None of these beliefs would have been correct. Perhaps, however, the district judge had in mind some other fact or argument that we do not now perceive, which would have been an adequate basis on which to deny Canteen's motion. The district judge's failure to explain his decision deprives us of access to any sufficient reasons he may have had.

■ We do not now join the Fifth Circuit in requiring judges to make findings and give explanations every time a party seeks sanctions under Rule 11, see *Thomas v. Capital Security Services*, 812 F.2d at 989. Sometimes the reason for decision is obvious. When the motion for sanctions is foolish, or when the reasons for denying a colorable motion are apparent on the record, the judge need not belabor the obvious. But when the motion is serious, a judge ought to treat with it seriously. Canteen wants more than $10,000 in attorneys' fees. This claim would be enough to support an entire lawsuit under the diversity jurisdiction, a suit in which a full trial followed by findings and conclusions would be necessary. A serious Rule 11 motion is not a gnat to be brushed off with the back of the hand. This motion was serious; it should have received serious attention; Canteen and this court are entitled to explanations.

The judgment of the district court is affirmed to the extent it denied Canteen's

request for fees under § 1988 and otherwise is vacated. On remand, the court shall fix the sanction for the pursuit of the objectively frivolous due process claim. The court shall take such evidence and make such findings as are appropriate with respect to the pursuit of the racial discrimination claim. Circuit Rule 36 shall apply on remand.

CUDAHY, Circuit Judge, concurring in part and dissenting in part:

I join in Parts I, II and III of the majority opinion but part company with it on Parts IV and V. These sections remand the case *to another judge* for Rule 11 determinations. Judge Holderman denied Canteen's motion for Rule 11 sanctions. I feel sure that his well-informed but unembroidered response to this motion is as solid and secure a basis for disposition of the sanctions question as will be the opinion of a new judge coming to the matter without prior exposure to the merits. If Judge Holderman had *imposed* sanctions, we might well require more explanation.

The approach revealed in Parts IV and V of the majority opinion effectively transforms Rule 11 from a protector against frivolous litigation, a boon to the parties and the courts, into a fomentor of derivative litigation, a mire for unwary parties and overzealous courts. In addition, under this approach the judicial process becomes a task not unlike the grading of law school examinations. Presumably the submissions of the parties are to be marked on a scale of "A" through "F". Anything falling on the far side of "C" merits not only loss of one's case but loss of one's shirt as well.

The majority finds the due process claim here to be objectively frivolous and "wacky"—apparently because the claim is partially based on "obscure cases," and because it fails to cite, rather than strives to distinguish, certain other cases. I am not persuaded by Szabo-Digby's claim but I would, at worst, rate it an "incomplete" rather than a solid "flunk." The majority's "wackiness" conclusion requires an analysis consuming five dense paragraphs and citing more than twenty cases—a possible indicator that the result is not so blindingly obvious as to bring it reasonably within the ambit of Rule 11. A similar indicator is the fact that one of the "obscure cases" on which this "frivolous" due process claim was based—*Three Rivers Cablevision, Inc. v. City of Pittsburgh*, 502 F.Supp. 1118 (W.D.Pa.1980)—has been *explicitly approved* by an Illinois court for its approach to due process. *Northwest Disposal Co. v. Village of Fox Lake*, 119 Ill.App.3d 546, 551, 75 Ill.Dec. 8, 12, 456 N.E.2d 691, 695 (1983) ("We recognize the very limited due process right for unsuccessful bidders as established under the rationale of *Three Rivers*.").[1]

In addition, there are real problems with imposing Rule 11 sanctions for a pleading—as not "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law"— on the basis of the sophistication of the legal arguments presented to defend the pleading and the erudition displayed by the responsible counsel. Here both counsel are sophisticated. And Szabo-Digby has cited relevant state and federal authority to support its due process claim. But I sense that, in general, with the majority's approach to what might be "objectively frivolous," ingenious and sophisticated (read expensive) rhetoric can salvage almost any position and avoid sanctions. But beware counsel, whose research (or resources) is not unlimited or whose skills in argumentation fall short of the most finely honed.

Due process, unfortunately, is an area where creativity and frivolity sometimes threaten to merge; I would be more re-

---

1. The majority mischaracterizes Szabo-Digby's argument by selectively quoting its brief, *see supra* at 1081. Szabo-Digby merely summarized the holding in *Three Rivers,* adopted in *Northwest Disposal,* when it argued:

   [W]here, as here, state law requires public contracts to be awarded to the lowest respon-

sible bidder, and *where a decision has been made to award such a contract,* a bidder has an interest in not having the procedure, which regulates the enjoyment of the benefit sought, applied in an arbitrary or capricious manner. Appellees' Brief at 38 (emphasis supplied).

strained than my brethren in handing out sanctions for civil rights claims. For the chilling effect of today's decision will reach as tellingly to the most meritorious such claim as to the least.

The remand for fact-finding on the race discrimination claim, a disposition that seems less supportable even than the due process critique, opens new vistas for peripheral litigation. Again Szabo-Digby may have losing arguments. But we now seem almost at the point of saying that the main question before the court is not "Are you right?" but "Are you sanctionable?" We are in danger of creating a whole new cottage industry of sanctions. I continue to believe that the 1983 amendment of Rule 11 was sound in concept, but it will surely defeat its own purpose if not applied with wisdom and restraint.[2]

I would be more inclined to accept the judgments of the district courts in these matters and not generally to require much explanation if sanctions are refused. The alternative is to pursue a nit-picking appellate review that will add more to our burdens than sanctions for "objectively frivolous" cases will take away.

I therefore respectfully dissent with respect to Parts IV and V.

**2.** The advisory committee that supported the 1983 amendment was much aware of the threat that derivative litigation poses to the goals of the amendment. The majority's holding in section V appears to sculpt virtually every Rule 11 motion into the likeness of a summary judgment motion, perhaps even requiring that explicit findings of fact and conclusions of law accompany every disposition of a Rule 11 motion. This surely runs roughshod over the committee's warnings against collateral proceedings:

To assure that the efficiencies achieved through more effective operation of the pleading regimen will not be offset by the cost of satellite litigation over the imposition of sanctions, *the court must to the extent possible limit the scope of sanction proceedings to the record.* Thus, discovery should be conducted only by leave of the court, and then only in extraordinary circumstances.

Fed.R.Civ.P. 11 (Notes of Advisory Comm., 1983 Amendment) (emphasis supplied).