**BARR LABORATORIES, INC.,**
Plaintiff–Appellee,

v.

**ABBOTT LABORATORIES,**
Defendant–Appellant.

**No. 77, Docket 88–7376.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 28, 1988.

Decided Feb. 3, 1989.

Frederick T. Davis, New York City (Saul B. Shapiro, Patterson, Belknap, Webb & Tyler, New York City, Catherine A. Sazdanoff, Abbott Laboratories, Chicago, Ill., of counsel), for defendant-appellant.

Michael F. Fitzgerald, New York City (John D. D'Ercole, Kissam & Halpin, New York City, of counsel), for plaintiff-appellee.

Before OAKES, Chief Judge, and MINER and ALTIMARI, Circuit Judges.

MINER, Circuit Judge:

Plaintiff-appellee Barr Laboratories, Inc. ("Barr") and defendant-appellant Abbott Laboratories ("Abbott") are manufacturers of pharmaceutical products. Among those products is a broad spectrum antibiotic drug produced by both parties. Although its patent rights in the drug have expired, Abbott continues to market the product under a brand name. Barr competes with Abbott by distributing the antibiotic under a generic name. Accusing Abbott of extending its patent monopoly by misrepresenting to state agencies and others the quality of the generic version of the drug, Barr commenced the action at bar in the United States District Court for the Southern District of New York. Alleged in the complaint are claims predicated on violations of the Sherman and Lanham Acts as well as pendent state tort claims. Following some pre-trial proceedings, the parties entered into and filed a stipulation dismissing the action with prejudice. Thereafter, Barr filed a similar action against Abbott in the District Court of New Jersey. There followed an application by Abbott in the Southern District for the imposition of Rule 11 sanctions upon Barr. Judge Duffy, to whom the case originally had been assigned, denied the application for lack of jurisdiction. While we are not prepared to say that a district court is totally without authority to impose sanctions after a stipulated dismissal, we hold that Abbott's application properly was denied under the circumstances presented here.

## BACKGROUND

The antibiotic drug manufactured by the parties is known as erythromycin ethylsuccinate, which apparently has the unique quality of producing no adverse side effects in those who use it. Abbott held the exclusive right to manufacture this drug from 1961 to 1978 under letters patent and at all times has distributed it under the name "EES–400." After the expiration of Abbott's patent, Barr obtained the necessary regulatory approvals and began to distribute the generic equivalent of EES–400 in competition with Abbott.

According to the complaint filed by Barr in this action on April 21, 1986, Abbott at some point "launched a predatory campaign to defame and render unmarketable" the product offered by Barr by sending "numerous communications to state regulatory agencies falsely representing that Barr's erythromycin ethylsuccinate was not the bioequivalent of Abbott's EES–400." The complaint alleged that Abbott also falsely stated that Barr's product was not suitable for its designated use and was potentially dangerous to the health of the user. The misrepresentations allegedly were made "to pharmacists and other prospective customers of such product" as well as to state agencies.

On the first claim pleaded in the complaint, antitrust violations under the Sherman Act, 15 U.S.C. § 2, Barr sought treble

its actual damages, together with attorneys' fees and costs. On the second claim, false descriptions of its product under the Lanham Act, 15 U.S.C. § 1125(a), Barr demanded injunctive relief as well as treble its lost profits. The tort claims of defamation, product disparagement, tortious interference with customer relations and unfair competition, pleaded in the third, fourth, fifth and sixth claims in the complaint, form the basis for Barr's demand for actual and punitive damages for the tortious conduct alleged.

An answer to the complaint was filed on June 16, 1986. On July 24, 1986, counsel for Abbott met with counsel then representing Barr in a futile effort to persuade the latter that there was no factual basis to justify further pursuit of this action. On October 10, 1986, Abbott responded to a document request by Barr. The documents were accompanied by a letter in which Abbott's counsel, referring to certain market share data also enclosed with the letter, advised his adversary: "I believe there are very grave flaws in your antitrust theory and that you would wish to review your complaint before we proceed with expensive litigation concerning that claim." It appears that this caveat went unanswered. A stipulated order, signed by Judge Duffy on October 3, 1986 and allowing either party to designate any discovery materials as confidential, was filed on October 24, 1986.

After a substitution of attorneys for Barr in January of 1987, it became apparent that the substituted attorneys had a potential conflict of interest, and the attorneys presently representing Barr formally entered the case as the result of a second substitution in April of 1987. Despite the two changes of attorneys, depositions of a number of Barr employees were conducted between February 5, 1987 and August 7, 1987. Barr never sought any depositions from Abbott.

At a status conference held on June 5, 1987, Judge Duffy ordered that discovery be concluded by August 31, 1987. Shortly after the conference, Barr's attorneys made a request for additional documents. By letter dated July 15, 1987, counsel for Abbott refused, for various reasons, to produce most of the documents requested. Following the last deposition, held on August 7, 1987, Barr's attorney claims to have "concluded that based upon the original complaint, Barr would unlikely be able to establish sufficient damages resulting from Abbott's disparaging communications." Accordingly, he says, a decision was made "to move to amend and supplement the complaint to assert claims for price discrimination and for injunctive relief."

Immediately prior to a pre-trial conference scheduled for September 18, 1987 to set a schedule for final disposition of the action, Barr served a motion to amend the complaint and for a preliminary injunction. The proposed amended complaint substantially re-asserted the allegations of the original complaint and added a claim for violation of Section 2(a) of the Clayton Act, as amended by the Robinson–Patman Price Discrimination Act, 15 U.S.C. § 13(a). At the conference held on September 18, Judge Duffy directed that Abbott respond to Barr's motion within three weeks. Judge Duffy also directed the filing of a motion for summary judgment by Abbott within the same time period, Abbott's counsel previously having expressed his intention to so move. On October 5, 1987, purportedly "because of the delay which would naturally result by the interposition of Abbott's motion for summary judgment," Barr withdrew its motion to amend and for preliminary injunction, leaving only Abbott's motion for summary judgment pending. On October 9, 1987, after obtaining a one week extension to file the summary judgment motion, counsel for Abbott wrote to Barr's attorney once again in an effort to bring the lawsuit to an end. The letter reviewed the merits of the action, referred to "the professional courtesy with which this litigation has been handled," and concluded as follows:

> [I]f we prevail on the summary judgment motion we are filing next week, Abbott intends to apply to the Court to hold Barr responsible for the expenses necessary to prove its position. *Eastway Construction Corp. v. The City of New York*, 762 F.2d 243, 251–54 (2d Cir.1985).

I therefore respectfully but earnestly urge you and your client to review your position and to withdraw the complaint before Abbott is forced to engage in further litigation expense.

On October 20, 1987, after the parties had agreed to an additional one week extension of time for the filing of the summary judgment motion and conducted some discussions relating to the disposition of the lawsuit, Barr agreed to enter into a stipulation dismissing the action with prejudice. Abbott's attorney forwarded the executed stipulation to Barr's attorney with a cover letter, dated October 21, 1987, in which he indicated that he was "appreciative of the manner in which the case was resolved." Although approval of the dismissal was not required, Fed.R.Civ.P. 41(a)(1)(ii), Judge Duffy marked the stipulation "So Ordered" and signed his name thereto on October 22, 1987. The stipulation was filed in the office of the Clerk of the Southern District on October 28, 1987. On the same day, according to Barr's counsel, the attorneys for the parties met to discuss "continuing problems" between their clients, including "Barr's price discrimination claim" and "Abbott's control over the raw materials used to produce ethromycin drugs." Apparently, nothing came of the discussion.

On December 3, 1987, Barr filed in the United States District Court for the District of New Jersey a second action against Abbott. Certain claims pleaded in the complaint in that action were virtually identical to those pleaded in the complaint and in the proposed amended complaint in the dismissed action. Summary judgment dismissing those claims already has been granted in the District of New Jersey.

The motion by Abbott for Rule 11 sanctions giving rise to this appeal was filed in the Southern District on January 14, 1988. Barr's sanctionable conduct was alleged to have consisted of the following: filing a meritless complaint; engaging in erratic and dilatory behavior designed to harass Abbott and prolong the litigation; violating the protective order; making and then abruptly withdrawing motions to amend the complaint and for preliminary injunction; and bringing a new action in New Jersey repeating many of the claims previously dismissed with prejudice by stipulation. Counsel for Barr filed in opposition an affidavit essentially denying all allegations of misconduct and asserting his "utmost good faith and professional courtesy" throughout the litigation.

The motion was submitted to Judge Duffy, who, on March 23, 1988, endorsed the moving papers as follows:

This case was dismissed by stipulation of the parties "So ordered" by the Court. As a result thereof I have no jurisdiction to grant the relief sought herein. Accordingly, the motion is denied. So ordered.

## DISCUSSION

Subject to certain exceptions not applicable here, Fed.R.Civ.P. 41(a)(1)(ii) allows a plaintiff, without leave of the court, to dismiss an action "by filing a stipulation of dismissal signed by all parties who have appeared in the action." We never have determined whether a district court is divested of all jurisdiction over an action after the filing of such a stipulation. We have decided, however, that a district court lacks jurisdiction to impose Rule 11 sanctions following dismissal pursuant to Fed.R.Civ.P. 41(a)(1)(i), which permits a plaintiff to dismiss an action without court order by filing a notice of dismissal before the defendant serves an answer or moves for summary judgment. *Johnson Chemical Co. v. Home Care Products, Inc.*, 823 F.2d 28 (2d Cir.1987). In only one case have we found power in the district court to vacate a notice of dismissal in order to conduct further proceedings, *Harvey Aluminum, Inc. v. American Cyanamid Co.*, 203 F.2d 105 (2d Cir.), *cert. denied*, 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383 (1953) (preliminary injunction motion treated as answer or motion for summary judgment for purposes of dismissal rule), and that case is said to be limited to its "extreme" facts, *Thorp v. Scarne*, 599 F.2d 1169, 1175–76 (2d Cir. 1979); *see also Santiago v. Victim Services Agency of the Metropolitan Assistance*

*Corp.*, 753 F.2d 219, 222 (2d Cir.1985) (no jurisdiction to award attorney's fees under 42 U.S.C. § 1988 after notice dismissal).

In *Foss v. Federal Intermediate Credit Bank*, 808 F.2d 657 (8th Cir.1986), the Court held that sanctions imposed after notice dismissal were invalid, but the same Court affirmed an order imposing sanctions where the notice dismissal followed a motion to dismiss, Fed.R.Civ.P. 12(b), and was accompanied by a prayer for sanctions, *Kurkowski v. Volcker*, 819 F.2d 201, 203 n. 7 (8th Cir.1987). In affirming the post-dismissal order in the latter case, the Court relied on the following factors: conversion of the motion to dismiss to a motion for summary judgment through consideration of matters outside the pleadings, rendering notice dismissal inapplicable; the district court's inherent authority over the cases and parties before it; and the fact that the sanctions application was made within the ten-day period allowed for the amendment of judgments under the provisions of Fed. R.Civ.P. 59(e). *Id.* at 203. Other circuits have determined that district courts retain the unqualified power to impose sanctions after voluntary dismissals under Rule 41(a)(1). *See Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir.1987); *see also Muthig v. Brant Point Nantucket, Inc.*, 838 F.2d 600, 603 (1st Cir.1988) (stipulated dismissal pursuant to Rule 41(a)(1)(ii)); *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1076–77 (7th Cir.1987) (notice dismissal pursuant to Rule 41(a)(1)(i)), *cert. dismissed*, — U.S. ——, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988).

Various rationales have been invoked to justify the imposition of sanctions after termination of an action by voluntary dismissal. The First Circuit, referring to "the protean quality of the word 'jurisdiction,'" *Muthig*, 838 F.2d at 603, found authority for post-dismissal sanctions in the broad language of Rule 11 and in that Rule's purpose of discouraging baseless claims and defenses, *id.* at 604. The Ninth Circuit found no loss of jurisdiction to impose sanctions because "the violation was complete when the complaint was filed." *Greenberg*, 822 F.2d at 885. Analogizing Rule 11 sanctions to contempt of court penalties,

the Seventh Circuit has concluded that the termination of jurisdiction over the merits of a claim occasioned by a voluntary dismissal does not mean an end to the power of the court to deal with the pre-dismissal conduct of the parties and their attorneys. *Szabo*, 823 F.2d at 1079.

■ In this Circuit, it is now well-settled that "all jurisdiction over the action," including the authority to impose sanctions, is lost after the plaintiff terminates a lawsuit by filing a notice of dismissal under Rule 41(a)(1)(i). *Johnson*, 823 F.2d at 31. Although our holding in *Johnson* has been the subject of scholarly support as well as criticism, *compare* G. Vairo, *Rule 11: A Critical Analysis*, 118 F.R.D. 189, 212 (1988), *with* Note, *The Use of Rule 11 Sanctions and Prevailing Party Fee–Shifting Statutes After Rule 41(a)(1)(i) Notice Dismissal*, 88 Colum.L.Rev. 1512, 1516–17 (1988), we have been persuaded by the need to encourage plaintiffs to use their "unfettered power" to discontinue untenable actions in the very early stages of the litigation, *Santiago*, 753 F.2d at 221, 223. A plaintiff's unilateral right to dismiss can, of course, be foreclosed by the simple expedient of filing an answer or a motion for summary judgment. *Id.* at 223.

■ A more advanced stage of litigation is reached when an answer or motion for summary judgment is filed. Voluntary discontinuance at that stage can be achieved only by a stipulated dismissal pursuant to Fed.R.Civ.P. 41(a)(1)(ii), and the policy of encouraging the early dismissal of meritless actions cannot then be served. It may well be that a district court has the authority to impose Rule 11 sanctions *sua sponte* after a stipulated dismissal. *See Donaldson v. Clark*, 786 F.2d 1570, 1576 (11th Cir.1986). The imposition of sanctions for the improvident signing of pleadings and other papers is designed to vindicate the authority of the court as well as to compensate adverse parties for expenses incurred by reason of abusive practices. *See Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir.1985); *see also* Notes of Advisory Comm. on Rules foll.

Fed.R.Civ.P. 11, 1983 Amendments ("The detection and punishment of a violation of the signing requirement ... is part of the court's responsibility for securing the system's effective operation."). The district court in the case at bar showed no inclination to apply sanctions *sua sponte*, and we leave the question of its authority to do so to another day. We hold only that fundamental fairness mandates the denial of Abbott's motion under the circumstances revealed here.

■ When the stipulation of dismissal was executed in this case, Abbott's attorney gave no indication that Rule 11 sanctions would be sought. Although Abbott's attorneys made several efforts, commencing immediately after the inception of the action, to persuade counsel for Barr that the action was meritless, no reference was made to an application for sanctions until Abbott's letter of October 9, 1987. In that letter, Abbott's attorney wrote of his client's intention to seek reimbursement for expenses *"if* we prevail on the summary judgment motion we are filing next week" (emphasis added). The language of the letter is clear: sanctions will be pursued only in the event that the motion for summary judgment is successful. Moreover, the threat to pursue sanctions was coupled with a suggestion "to review your position and to withdraw the complaint" before additional expenses are incurred. The suggestion implied that dismissal alone would satisfy Abbott.

It is significant to our disposition of this case that counsel for the parties maintained an excellent professional relationship despite sharp disagreements as to the merits of the action. In the letter of October 9, Abbott's attorney noted that the litigation had been handled with "professional courtesy," and in his letter of October 21, 1987, transmitting the stipulation of dismissal, he expressed his appreciation for "the manner in which the case was resolved." The attorneys apparently held a cordial meeting even after the action was terminated, in an effort to resolve differences still outstanding. It is plain that Abbott's conduct lulled Barr into a false sense of security and that Barr was under the impression that the action was finally and conclusively terminated for all purposes. Abbott made no motion for Rule 11 sanctions either before or immediately after the stipulation of dismissal was filed. Under these conditions, we have no hesitation in saying that it would be manifestly unfair to award sanctions against Barr and in enunciating a rule that would prohibit a motion for Rule 11 sanctions after the execution of a stipulation of dismissal without a reservation in the stipulation of the right to move for such relief. *Cf. Gravatt v. Columbia University*, 845 F.2d 54, 56 (2d Cir.1988) (where plaintiff moves for dismissal under Rule 41(a)(2), court must give notice of intention to dismiss with prejudice). A stipulation of dismissal is, after all, "a mutual agreement by all the parties," *Poloron Products, Inc. v. Lybrand Ross Bros. & Montgomery*, 534 F.2d 1012, 1017 (2d Cir.1976); *see In re International Business Machines Corp.*, 687 F.2d 591, 601 (2d Cir.1982), intended to bring finality to litigation, at least as far as the parties are concerned.

■ We can only conclude in this case that Abbott had no intention of pursuing a claim for sanctions until the filing of the action in the District of New Jersey. We express no opinion as to whether the filing of that action involved any sanctionable conduct on the part of Barr or its attorneys. We note that applications for Rule 11 sanctions must be made in the court where the offending papers are filed, since the abusive conduct is determined as of the time of filing. *See Calloway v. Marvel Entertainment Group*, 854 F.2d 1452, 1470 (2d Cir.1988). It was therefore improper for Abbott to seek sanctions in the Southern District of New York for claimed violations of Rule 11 committed in the District of New Jersey.

## CONCLUSION

For the foregoing reasons, the order of the district court is affirmed.

ALTIMARI, Circuit Judge, concurring:

The district court's order denying the motion for Rule 11 sanctions stated that "This case was dismissed by stipulation of the parties 'So ordered' by the Court. As a result thereof I have no jurisdiction to grant the relief sought herein." I agree with the majority's determination that "fundamental fairness mandates the denial of Abbott's motion under the circumstances revealed here." To the extent that the language of the majority opinion may lead some to believe that there is no jurisdiction to consider a Rule 11 motion after a stipulated dismissal under Fed.R.Civ.P. 41(a)(1)(ii), however, I disagree.

The fundamental fairness or unfairness of the circumstances surrounding the making of a motion is not a guidepost to whether subject matter jurisdiction exists, but is an issue to be considered in a decision on the merits. I read the majority opinion as a decision on the merits and I concur in the result with the understanding that such a determination presupposes the existence of jurisdiction.