COMPLETE AUTO TRANSIT, INC., Plaintiff,

v.

CHAUFFEURS, TEAMSTERS AND HELPERS LOCAL UNION NO. 414, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, a labor organization, Defendant.

No. 1:93–CV–302.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

March 31, 1994.

Mark A. Garvin, Barnes and Thornburg, Fort Wayne, IN, R. Ian Hunter, Robert L. Mercado, and Patricia M. Morrow, Dean and Fulkerson, Troy, MI, for plaintiff.

Joseph Christoff, Sr., Partner, Christoff and Christoff, Fort Wayne, IN, Edward J. Fillenwarth, Jr. and Fred O. Towe, Indianapolis, IN, for defendant.

*ORDER*

WILLIAM C. LEE, District Judge.

This matter is before the court on defendant's, Chauffeurs, Teamsters and Helpers Local Union No. 414, International Brotherhood of Teamsters (hereinafter: the Union), Motion for Sanctions pursuant to Fed. R.Civ.P. 11 against plaintiff, Complete Auto Transit, Inc. (hereinafter: Complete). The Union asserts that Complete instituted a frivolous action against the Union where Complete sought judicial review of a Board of Arbitration's (hereinafter: the Board) award and decision adverse to Complete. The Union asks this court to impose sanctions upon Complete and its attorneys by ordering them to reimburse the Union for its reasonable attorney fees incurred in defending this case.

Also before the court is Complete's Motion for Leave to File Complete's Response to Teamster's Reply to Complete's Memorandum of Law in Opposition to Teamster's

Motion for Sanctions. For the following reasons, Complete's Motion for Leave is denied, and the Union's Motion for Sanctions is also denied.

### STATEMENT OF THE CASE

Complete instituted the present action by filing its Civil Complaint to Vacate Arbitration Award and for Injunctive Relief on November 19, 1993. Complete also filed a Verified Motion for Temporary Restraining Order (TRO), Preliminary Injunction Staying Enforcement of Arbitration Award and Order to Appear and Show Cause on November 19, 1993. On December 2, 1993, at the conclusion of a telephone conference where both parties were represented by counsel, this court denied Complete's Motion for a TRO and ordered both parties to brief the issue of whether this court should issue a preliminary injunction. The court also instructed both sides to file cross motions for summary judgment by December 10, 1993, and any reply or response thereafter in accordance with Local Rule 9 with regard to whether the Board's decision and award should be vacated.

The court denied Complete's Motion for Preliminary Injunction in an Order issued December 17, 1993. Complete and the Union filed their cross Motions for Summary Judgment on December 10, 1993. Complete and the Union completed briefing on the cross Motions for Summary Judgment on January 5, 1994. The court granted the Union's Motion for Summary Judgment and denied Complete's in an Order issued January 19, 1994.

The Union filed its Motion for Sanctions on January 5, 1994, and filed supplemental authority in support of its Motion on January 12, 1994. Complete requested and received an extension of time in which to respond to the Union's Motion and filed its Answer to Defendant/Counter–Plaintiff's Motion for Sanctions on and Memorandum of Law in Opposition to Defendant/Counter–Plaintiff's Motion for Sanctions on February 10, 1994. The Union filed a Reply to Complete's Memorandum in Opposition on February 17, 1994.

In Complete's Motion filed March 14, 1994, Complete seeks leave of the court in order to file a further Response to the Union's Reply that it filed on February 17, 1994.

### DISCUSSION

#### Complete's Motion for Leave

The court denies Complete's Motion for Leave to File a Response to the Union's Reply that the Union filed on February 17, 1994, as the court would not be aided in its decision regarding sanctions by any more filings in this matter. The court has been inundated with paper throughout this cause of action, and although it can appreciate the duty of counsel to zealously represent their clients, the court also believes in the efficient administration of justice and in conserving the limited resources of all parties concerned. Therefore, the court finds the issue of imposing sanctions adequately briefed, denies Complete's Motion for Leave and will now discuss the merits of imposing sanctions under Fed.R.Civ.P. 11.

#### The Standard for the Imposition of Sanctions

Complete filed its cause of action on November 19, 1993, therefore, the court is guided by Fed.R.Civ.P. 11 as amended in 1983, and not by the recently enacted amendments to Rule 11 that took effect December 1, 1993.[1] Fed.R.Civ.P. 11 states in pertinent part:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record ... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or

---

1. The court notes, however, that its analysis would not be different even if it were to apply the new Rule as amended in 1993.

to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11.

The Rule provides two grounds for the imposition of sanctions, namely, the "frivolous clause" and the "improper purpose" clause. *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 752 (7th Cir.1988). The frivolous clause requires that a party or the attorney conduct a reasonable inquiry into the facts and the law relevant to the case. *Id.* The improper purpose clause insures "that a motion, pleading, or other document may not be interposed for purposes of delay, harassment, or increasing the costs of litigation." *Brown v. Federation of State Medical Boards of United States*, 830 F.2d 1429, 1436 (7th Cir.1987).

■ The standard for imposing sanctions under either prong of Rule 11 is an "objective determination of whether the sanctioned party's conduct was reasonable under the circumstances." *Id.* If a pleading, motion, or other paper violates either prong of Rule 11, the court "shall impose" an appropriate sanction, "which may include the amount of reasonable expenses and attorney fees incurred by the other party because of the filing of the pleading or motion." *Id.* at 1433; *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1082 (7th Cir.1987), *cert. dismissed*, 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988).

■ Rule 11 permits the court to impose sanctions "upon the person who signed [the filing], a represented party, or both." *See*, 5A Wright and Miller, *Federal Practice and Procedure: Civil 2d*, § 1336 (1990) ("the court's discretion includes the power to impose sanctions on the client alone, solely on the counsel, or on both."); *see also, Kapco Mfg. Co. v. C & O Enters., Inc.*, 886 F.2d 1485, 1489 (7th Cir.1989) (Affirming trial court's imposition of Rule 11 attorney fees against plaintiff and plaintiff's counsel, jointly and severally).

Finally, the Advisory Committee Notes to the 1983 Amendment of Rule 11 instructs that the Rule is not a tool to be used to "chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Fed.

R.Civ.P. 11, Advisory Committee Note. Moreover, the Note states that a court should "avoid using the wisdom of hindsight ..." in determining whether sanctions are warranted under the circumstances. *Id.*

### The Parties' Contentions

■ The Union asserts Complete's institution of the instant action requesting a TRO, preliminary injunctive relief, and a vacation of the Board's Decision and Award was frivolous under the circumstances in that Complete's filings had no basis in law or fact. The Union also contends that Complete failed to conduct a reasonable inquiry into the relevant case law in that Complete ignored or misstated controlling law in this matter. In support of its position, the Union points to this court's two previous written Orders denying Complete's Motion for Preliminary Injunctive Relief and Complete's Motion for Summary Judgment. The Union also points to this court's denial of Complete's Motion for a TRO given orally during the telephone conference call of December 2, 1993. The Union expounds for thirteen (13) pages in its Reply, without any citation to authority concerning the appropriateness of sanctions, in an effort to show why the imposition of sanctions is clearly warranted.

Complete states that it had a reasonable basis in fact and in law that this court would grant all of the relief it requested, and that it conducted a reasonable inquiry into the relevant case law concerning its requested relief. Complete maintains that there is no relevant case law on point controlling the instant dispute, and therefore, it had to argue by analogy to other relevant federal labor law. Complete digresses for twenty-three (23) pages explaining why its position advanced in its previous filings was reasonable under the circumstances.

### Sanctions Are Not Warranted

The court is not persuaded by the Union's alarmist approach in its Motion for Sanctions, and in its Reply to Complete's Memorandum of Law in Opposition. The gist of the Union's argument is that because the court ruled in the Union's favor and against Complete on Complete's request for a TRO,

preliminary injunctive relief, and request to vacate the Board's decision, Complete's positions on the merits were frivolous, and therefore, the court should impose sanctions against Complete.

However, the Union's argument is without merit. As noted *supra*, the Union exhausts an enormous amount of energy in making the argument that sanctions are warranted, but "[h]e draweth out the thread of his verbosity finer than the staple of his argument." William Shakespeare, Love's Labour's Lost act 4, sc. 3.

The court refuses the Union's invitation to engage in the wisdom of hindsight. The court is mindful of the Advisory Committee Note that indicates courts should not engage in the practice of hindsight in determining whether sanctions are warranted under Rule 11. That is not to say that the court does not place any weight upon the merits of the case and how the court ruled on the merits, but it is to say that the court will analyze all of the circumstances of the case in determining whether Complete's cause of action was frivolous, therefore, warranting the imposition of sanctions.

The court will briefly analyze each type of relief requested (TRO, preliminary injunctive relief, vacation of the arbitration award) by Complete and demonstrate that none of the relief requested resulted in frivolous litigation.

The court will first address whether Complete's Motion for a TRO and Preliminary Injunctive Relief was frivolous. The Union asserts that Complete was precluded by well-settled law and the Collective Bargaining Agreement (CBA) from seeking judicial injunctive relief that would restrain the Union from striking if Complete refused to abide by the Board's decision. However, a close examination of the record in this matter reveals that Complete did not request this court to issue an injunction against the Union restraining it from striking. Rather, Complete requested this court to issue a TRO and a preliminary injunction restraining the Union from enforcing the Board's decision in feder-

al court until this court determined the validity of the Board's decision. In effect, Complete wanted a stay of execution pending appeal of the Board's decision.

This court denied Complete's request for equitable relief. *Complete Auto Transit v. Union Local No. 414*, 839 F.Supp. 1339 (N.D.Ind.1993). However, the court does not find Complete's argument for injunctive relief so totally lacking merit as to warrant the imposition of sanctions.

Complete's theory for injunctive relief was a novel one. Complete's request did not clearly fit into any well established exception to the Norris–LaGuardia Act, 29 U.S.C. § 104, which Act denies federal courts jurisdiction to issue injunctions against various concerted activities in any case involving a labor dispute, as demonstrated by neither party nor this court discovering any case law directly on point. Therefore, Complete argued that this court should forge a new exception to the Norris–LaGuardia Act and issue injunctive relief in the instant case because the injunction would further advance the public policy of having parties to a labor dispute solve their disputes through arbitration. *See, United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 566, 80 S.Ct. 1343, 1345–46, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

Complete admitted that it was not entitled to a *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970)[2] injunction that would prevent the Union from striking in a concerted effort to enforce the Board's decision. In short, Complete argued that because it was asking for an injunction prohibiting the Union from enforcing the Board's decision in federal court pending this courts determination of the validity of the Board's decision, the request for injunctive relief did not fall under *Boys Markets* or any other well-estab-

---

**2.** In *Boys Markets,* the Supreme Court held that where a union has agreed to arbitrate disputes instead of striking, federal courts can enjoin the union from striking pending arbitration of the dispute underlying the strike. Such an injunction is proper as it aids arbitration.

lished exception to the Norris–LaGuardia Act. Thus, the court could issue an injunction under its inherent equitable powers.

Admittedly, Complete's request for injunctive relief upon a theory of a stay of execution pending appeal had a common sense allure, however, without any case law in support of their position and without Congress explicitly making this option available, this court exercised its discretion and declined Complete's invitation to forge a new exception to the Norris–LaGuardia Act. This court concluded that since it could not enjoin the Union from engaging in a strike as a concerted effort to pressure Complete to abide by the Board's decision, this court would undermine the Norris–LaGuardia Act and the limited *Boys Markets* exception if it were to restrain the Union from enforcing the Board of Arbitration's decision through other "concerted" means, namely, in federal district court.

This court is further convinced that Complete's request for injunctive relief was not frivolous, and therefore, does not warrant the imposition of sanctions, as the court devoted eighteen (18) contemplative pages in its Order of December 17, 1993 denying Complete's requested relief. The court did not simply state "this case presents no issue" and then deny the request as it surely could have done. Instead, this court carefully considered Complete's argument, but rejected Complete's argument, not because it was frivolous, but because this court believed the alternative argument, that the court would undermine the Norris–LaGuardia Act and the other narrow exceptions to that Act if it granted Complete's request, to be the better argument.

Accordingly, the court finds that Complete was arguing for a reasonable extension and modification of existing law where it requested injunctive relief, and that it did not present any frivolous pleading, motion or other paper in regard to the same. Thus, sanctions pursuant to Fed.R.Civ.P. 11 are not warranted.

█ The court also finds that Complete's Motion to Vacate the Board's Decision was not frivolous as neither of the arguments advanced by Complete in support of its posi-

tion to vacate the decision of the Board were frivolous. Complete argued that the decision of the Board should have been vacated because it failed to decide the issue the parties presented, and because the decision exceeded the scope of the issue submitted to the Board. The ultimate issue that was to be decided by the Board was whether Complete violated the CBA by instituting a Tuesday through Saturday workweek without the consent of the Union.

Complete asserted that the decision of the Board failed to decide this issue and that the Board exceeded its authority because the Board decided whether the newly implemented workweek was a Tuesday through Saturday workweek by analyzing how Complete scheduled employee time off for holidays and how holiday pay rates were calculated. Complete argued that the Board should have determined whether the shift start-time of 11:30 p.m. Monday equated a Tuesday through Saturday workweek.

The court held in its Order of January 19, 1994, that the Board did decide the ultimate issue before it, that is, whether Complete instituted a Tuesday through Saturday workweek in violation of the CBA. The court found that the Board answered this question in the affirmative. The court held that Complete's real objection to the Board's decision focused on how the Board reached its decision; by looking at how Complete scheduled time off for holidays and how holiday pay rates were calculated.

However, because of the manner in which the Board analyzed the issue, and especially in light of the poorly written decision issued by the Board, the court finds that there was genuine concern and confusion on the part of Complete when it reviewed the Board's decision. It was reasonable for Complete to seek judicial review of the decision and argue that the Board failed to answer the issue presented, and that the Board exceeded its authority by deciding some other issue than the one presented.

Complete also argued that even if the Board did answer the ultimate issue the parties submitted, the Board's decision did not derive its essence from the CBA. Complete

correctly noted that the section of the Board's decision explaining how it determined that Complete had instituted a Tuesday through Saturday workweek in violation of the CBA is completely devoid of any references to the CBA. The fact that the Board's decision lacks any definite references to the CBA during its discussion of this issue understandably caused Complete concern. Because of the cryptic and somewhat unintelligible decision of the Board, this court believes Complete was justified in seeking judicial review of the decision.

Whether the Board's decision derived its essence from the CBA was not immediately apparent to the court either, but the court decided that the Board's solution was rationally derived from some plausible theory of the general framework of the CBA. The Board did set forth the paragraphs of the CBA it was relying upon in the opening pages of its decision, but it failed to reference back to any specific paragraph in the body of its discussion of the issue presented. This court concluded that the Board must have discovered implied terms within the CBA to arrive at its decision. Because the Board must have discovered implied terms within the CBA, the reasoning of the Board was understandably difficult to follow. Thus, it was reasonable for Complete to question the Board's reliance upon the CBA in rendering its decision.

The court notes that whether the Board's decision derived its essence from the CBA, a question this court answered in the affirmative, was a close decision. It weighed heavily upon the court that any reasonable doubt as to whether the arbitrator's decision draws its essence from the collective bargaining agreement must be resolved in favor of the arbitrator. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

The Seventh Circuit recently held in *Chicago Typographical Union v. Chicago Sun-Times*, 935 F.2d 1501 (7th Cir.1991), a case similar to the instant case at bar which this court relied upon in reaching its decision that the Board's decision derived its essence from the CBA, "[t]he zanier the award, the less

plausible it becomes to ascribe it to a mere error in interpretation rather than to a willful disregard of the contract. This approach can make the line between error and usurpation waver." *Id.* at 1506. The court submits this is one of those close cases where the line wavered.

Therefore, the court finds that it was reasonable for Complete to seek judicial review of the Board's decision, and that the arguments advanced by Complete for the vacation of the Board's decision were not frivolous. Accordingly, sanctions pursuant to Fed. R.Civ.P. 11 are not warranted.

### CONCLUSION

For all of the foregoing reasons, Complete's Motion for Leave is hereby DENIED, and the Union's Motion for Sanctions is also DENIED.