George GREENBERG; Stephen Savran; and Louis Benetti, Plaintiffs-Appellees,

and

Fred D. Gibson, III, Esq.; and Gibson, Skigin & Colvin, Appellees,

v.

Frank SALA; J. Stewart White; and Donald C. Long, Defendants-Appellants.

George GREENBERG; Stephen Savran; and Louis Benetti, Plaintiffs-Appellees,

and

Fred D. Gibson, III, Esq.; and Gibson, Skigin & Colvin, Appellees,

v.

Donald C. HILL, et al., Defendants,

and

Jack I. McAuliffe, Defendant-Appellant.

Nos. 86–2348, 86–2349.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 12, 1987.

Decided July 21, 1987.

As Amended Sept. 25, and Oct. 7, 1987.

---

Larry R. Hicks, Reno, Nev., for plaintiffs-appellees Greenberg and Savran.

G. Vern Albright, William H. Stoddard and G. Mark Albright, Las Vegas, Nev., for plaintiffs-appellees Gibson, III and Gibson, Skigin & Colvin.

Stephen C. Mollath, Reno, Nev., for defendants-appellants Sala, White and Long.

David Grundy, Reno, Nev., for defendant-appellant McAuliffe.

Before FLETCHER, BEEZER and THOMPSON, Circuit Judges.

PER CURIAM:

The appellants challenge the district court's denial of Rule 11 sanctions against their adversaries in a federal action (now

dismissed) involving allegations of fraud, breach of fiduciary duty and malpractice. We affirm.

## FACTS

Drs. Greenberg, Savran, and Benetti ("plaintiffs") entered into a partnership to invest in certain business enterprises. When these enterprises became unprofitable, the plaintiffs sought to sell them. They retained Donald Hill of Donald C. Hill, Ltd. to consummate the sale, which he did in July 1980. Hill continued to serve the plaintiffs as they wound up their partnership after the sale.

In November 1980, Donald C. Hill, Ltd. and another professional corporation, Sala & McAuliffe, Chartered, became associated under the name of Sala, McAuliffe, Hill & White. These combined corporations employed Sala, McAuliffe, Hill, White and Long ("defendants"). Long had worked as a law clerk for both corporations until September 1980, when he was admitted to the Nevada bar. Thereafter, he worked as an attorney for both corporations.

In April 1981, Hill left his Nevada practice to accept employment in Western Europe. McAuliffe assumed responsibility for the legal affairs of the plaintiffs' partnership. At the end of 1981, Donald C. Hill, Inc., and Sala & McAuliffe, Chartered, terminated their association. McAuliffe continued to represent the plaintiffs until mid–1982, when he withdrew because his fees had not been paid.

Meanwhile, the plaintiffs began to suspect that Hill had acted negligently or even fraudulently in his handling of their affairs. They also suspected that Sala, McAuliffe, White, and Long—because they had worked with Hill—may have had some share in wrongdoing. In April 1985, the plaintiffs instructed their new attorney, Gibson, to institute an action against all the defendants for fraud and misrepresentation. Gibson was concerned that such a suit might soon be time-barred, so after approximately 100 hours of investigation, document review, and legal research he filed lengthy complaints in federal and state courts on July 5, 1985.

The federal complaint named as defendants Hill, Sala, McAuliffe, White, and Long as individuals, Donald C. Hill, Ltd., the association of Sala, McAuliffe, Hill & White, and a number of fictitious individuals, corporations, and partnerships.[1] Sala & McAuliffe, Chartered was not separately named; apparently the plaintiffs did not know of its existence distinct from Sala, McAuliffe, Hill & White. The federal complaint included two counts based on the federal RICO statute, 18 U.S.C. § 1961, et seq., along with six other counts based on violations of Nevada law concerning fraud, negligent misrepresentation, breach of fiduciary duty, malpractice, and intentional infliction of emotional distress. These counts charged that each of the individual defendants had participated in a series of wrongful acts extending from July 1980 to July 1985. Many of these acts were described in only a conclusory manner, for example:

> On or about July 31, 1980, Defendants, and each of them, ... having devised and intending to devise a scheme or artifice to defraud, ... did place in a post office and authorized depository for mail matter ... for the purpose of executing and attempting to execute such scheme or artifice to defraud....

The federal complaint was served on Donald C. Hill, Ltd. No other service of the federal or state complaint was attempted. On August 9, 1985, Hill moved to dismiss the federal action. On August 28, the plaintiffs agreed to a voluntary dismissal of the suit against Hill, pursuant to Fed.R.Civ.P. 41(a)(1). On September 18, the district court entered an order dismissing the rest of the defendants.

Meanwhile, Sala, McAuliffe, White, and Long learned of the complaint against them from a newspaper article. In November 1985, they all moved for sanctions against the plaintiffs and their attorney, Gibson, pursuant to Fed.R.Civ.P. 11. In response, the plaintiffs (through Gibson)

---

1. The state court complaint was very similar to the federal one, but its terms are not directly relevant in this appeal.

filed affidavits by experts such as Professor Arthur Miller (who drafted Rule 11), Professor Robert Blakey (who drafted the federal RICO statute) and Dominic Gentile (Chairman of the ABA Criminal RICO Section), all to the effect that Gibson's original complaint had complied with Rule 11. After a flurry of motions, the district court allowed these affidavits to be filed but did not allow an evidentiary hearing.

On June 12, 1986, the district court denied the defendants' motions for sanctions. The defendants other than Hill timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## JURISDICTION AND STANDING

■ At the time the district court denied the defendants' motions for Rule 11 sanctions, the case had been dismissed. The dismissal, however, did not deprive the court of jurisdiction to consider the motions. *See Szabo Food Service, Inc. v. Canteen Corp.*, No. 86–3093, slip op. (7th Cir. Jun. 29, 1987) (voluntary dismissal under Rule 42(a)(1)).

■ If Rule 11 was violated, the violation was complete when the complaint was filed. *Pantry Queen Foods, Inc. v. Lifschultz Fast Freight, Inc.*, 809 F.2d 451, 453–54 (7th Cir.1987). The defendants were named as defendants in the complaint, however, the complaint was not served on any of them except Hill. The other defendants learned about the filing of the complaint from a newspaper article. The filing of the complaint, nonetheless, caused the defendants to incur costs and attorney fees. They also claim to have suffered additional damage. Moreover, the filing of the complaint necessarily triggered the expenditure of court resources. Frivolous complaints filed in violation of Rule 11 "sap the time of judges, forcing parties with substantial disputes to wait in a longer queue...." *Szabo Food Service* at slip op. 5. The defendants had standing to seek Rule 11 sanctions in the district court, and they have standing to pursue this appeal. *See also Westmoreland v. CBS, Inc.*, 770 F.2d 1168 (D.C.Cir. 1985) (nonparty witness entitled to seek Rule 11 sanctions).

## ANALYSIS

The appellants, Sala, McAuliffe, White, and Long (defendants below), argue at length that they were unfairly damaged by factual and legal errors in the complaint. The issues presented on appeal are, accordingly, whether the appellants' criticisms of the complaint are well founded and, if so, whether the district court erred when it denied the motions for sanctions.

Fed.R.Civ.P. 11 mandates sanctions when a violation has occurred; the issue of whether or not specific conduct violated the rule is reviewed as an issue of law, de novo. *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir.1986). The district court's factual determinations concerning that conduct are disturbed only if clearly erroneous. *Id.*

Before 1983, Rule 11 was interpreted to require subjective bad faith by a signing attorney before sanctions could be imposed, but amended Rule 11 tests the actions of a signing attorney by a standard of objective reasonableness under the circumstances. *Golden Eagle*, 801 F.2d at 1536; *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829 (9th Cir.1986). This circuit has identified two circumstances in which sanctions are appropriate: where a litigant makes a "frivolous filing," that is, where he files a pleading or other paper which no competent attorney could believe was well grounded in fact and warranted by law; and where a litigant files a pleading or other paper for an "improper purpose," such as personal or economic harassment. *Golden Eagle*, 801 F.2d at 1537–38; *Zaldivar*, 780 F.2d at 830–32. Where a *complaint* is in question, the "improper purpose" analysis is not necessary because a non-frivolous complaint cannot be said to be filed for an improper purpose. *Golden Eagle*, 801 F.2d at 1538; *Zaldivar*, 780 F.2d at 832; *cf. In re Itel Securities Litigation*, 791 F.2d 672, 675 (9th Cir.1986) (papers other than complaints may be filed for an improper purpose even though they are not frivolous), *cert. denied*, —— U.S. ——, 107 S.Ct. 880, 93 L.Ed.2d 834 (1987).

Accordingly, we need not look beyond the "frivolous filing" standard in this case.

The appellants' numerous objections to the complaint may be summarized under the following headings:

1. The complaint accused the appellants of numerous fraudulent or negligent acts, of which one example has been given above, although the plaintiffs and their attorney knew or should have known that many of those accusations had no basis in fact.

2. The complaint accused the appellants of primary liability for the enumerated acts of misconduct, although the plaintiffs and their attorney knew or should have known that the facts supported no more than secondary liability.

3. The complaint ignored the law of Nevada, which shielded the appellants from secondary liability on the state law counts.

4. The complaint ignored the Nevada statutes of limitations, which protected the defendants from suit on certain state law counts.

Some of the appellants' factual objections to the complaint appear to be well founded. For example, the complaint alleged that from July 1980 to July 1985 defendant Hill was associated with Sala, McAuliffe, and White and participated in fraudulent acts with them. In fact, Hill had no association with Sala, McAuliffe, and White (other than through Long, the shared law clerk) until November 1980, and this association terminated at the end of 1981.[2] Plaintiffs' attorney Gibson conceded that he knew this in his affidavit in opposition to the motions for sanctions.

▪ The appellants also argue that the complaint contains allegations that the various individual defendants performed certain wrongful acts when their attorney, Gibson, knew that the defendants had not personally performed the acts, but could be held responsible for them only on a theory of agency, vicarious liability, or *respondeat superior*. The complaint contained no allegations of agency, vicarious liability, or *respondeat superior*. But as a matter of law, allegations of agency, vicarious liability, and/or *respondeat superior* are not required. A person legally responsible for an act may be alleged to have committed it without going into the theories which support that ultimate fact. Therefore, we cannot say that the plaintiffs' attorney, Gibson, pleaded statements of ultimate fact in the complaint which he knew to be legally untrue. While he may have known that an individual defendant could be held liable for the act only by principles of agency, vicarious liability, or *respondeat superior*, he was not required to include these allegations in the complaint. And it appears that the attorney, Gibson, did have sufficient basis upon which to allege the ultimate fact of the individual defendants' acts, even knowing, as in some instances he did, that these defendants did not personally perform the wrongful acts, and their responsibility for improper conduct would have to be established through the acts and omissions of others.

Appellants further contend the complaint is replete with legal errors. This contention is vigorously disputed by the appellees. They point out that, under Nevada law, attorney members of professional corporations are shielded from liability for the acts of other members only if they did not "participate" in those acts. Nev.Rev.Stat. § 89.060; *Grayson v. Jones*, 101 Nev. 749, 710 P.2d 76 (1985). Whether or not this statute applies cannot be determined at this stage of the proceedings. Similarly, the statutes of limitations invoked by the appellants may be tolled if the defendant conceals his wrongful acts from his victim. Nev.Rev.Stat. § 11.207(2). Whether or not this tolling provision applies cannot be determined at this stage of the proceedings.

▪ We conclude that the complaint does not contain any significant legal errors. It does contain some errors of fact which Gibson, by his own admission, could have avoided. The question we must decide is whether these factual errors are so significant as to cause the appellees to be liable for sanctions for violating Rule 11.

---

2. It follows that the district court erred when it found that Hill was "associated" with the "law firm of Sala, Mcauliffe, Hill & White" when the plaintiffs' businesses were sold in July 1980.

Since the pleading involved here is a complaint, the appellants must show that it was frivolous. *Golden Eagle*, 801 F.2d at 1538. A complaint is factually frivolous if a competent attorney, after reasonable inquiry, could not form a reasonable belief that the complaint was well founded in fact. *See id.; Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2nd Cir.1985).

We have imposed Rule 11 sanctions where some error or admission by a litigant undermined his entire case at a stroke. *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500 (9th Cir.1986) (MGIC sued for fraud but its own contemporary memorandum completely defeated its allegations of reliance); *Orange Prod. Credit Ass'n v. Frontline Ventures, Ltd.*, 792 F.2d 797 (9th Cir.1986) (there was no subject matter jurisdiction for Orange's federal complaint, as another federal court had already held); *Mossman v. Roadway Express, Inc.*, 789 F.2d 804 (9th Cir.1986) (Mossman's summary judgment motion was doomed because it contained no affidavits); *see also Frazier v. Cast*, 771 F.2d 259 (7th Cir.1985) (defendant's factual allegations in opposition to summary judgment were disproved by his own deposition); Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181, 186–89 (1985).

In less startling cases, we are reluctant to impose sanctions for factual errors, especially errors in papers filed before an opportunity for discovery, if the litigant has conducted a reasonable inquiry into the facts. Our reluctance to impose Rule 11 sanctions is in accord with the views of the Advisory Committee. The Committee's note to amended Rule 11 states:

> The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading ... was submitted.

We have declared ourselves averse to an interpretation of Rule 11 that would increase "excess litigation" and blur the roles of attorneys and judges over the proper reading of legal precedent. *Golden Eagle*, 801 F.2d at 1542. Similarly, we resist an interpretation of Rule 11 that would blur the roles of attorneys and finders of fact. We hold that a complaint based on reasonable inquiry should not be found to be factually frivolous unless some clear authority or a litigant's own clear admission erases the factual underpinning from some essential element of the litigant's pleading.

In this case, the appellees and their attorney, Gibson, made a sufficient inquiry. Gibson spent approximately 100 hours interviewing his clients, reviewing the records, and researching the law. He enlisted experienced counsel to conduct further interviews and to review the complaint. The complaint contained factual errors, as already noted, but the complaint was not frivolous.

AFFIRMED.