Ismar **HOCHEN** as Administrator of the Estate of Ismael Hochen, Richard Dufault, Christine Dufault, individually, Christine Dufault, as mother and next friend of Richard Dufault, Jr. and Leah Default, Plaintiffs,

v.

**BOBST GROUP, INC.,** Defendant.

No. Civ.A. 96–11214–RBC.[1]

United States District Court,
D. Massachusetts.

Dec. 26, 2000.

---

1. With the parties' consent, this case has been referred and reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

Daniel P. Gibson, Gibson & Behman, Burlington, MA, for individual party.

Elisabet C. Hayes, Gibson & Behman, PC, Boston, MA, for individual party.

Janet H. Pumphrey, Lenox, MA, for plaintiff.

### MEMORANDUM AND FIRST ORDER ON WINTERTHUR'S MOTION FOR FEES, COSTS, AND SANCTIONS (# 268)

COLLINGS, Chief United States Magistrate Judge.

#### I. INTRODUCTION

On February 18, 2000, plaintiff filed Plaintiffs' Motion to Amend Complaint (# 168) seeking to add as a party defendant Winterthur International ("Winterthur"). The motion was ultimately denied, so Winterthur never became a party to the litigation. Winterthur sought sanctions against plaintiff's attorney pursuant to Rule 11, Fed.R.Civ.P. (hereinafter, "Rule 11") and 28 U.S.C. § 1927 (hereinafter, "§ 1927"). The issues presented by the motion are four: (a) does Winterthur, a non-party to the action, have standing to seek sanctions, (b) if so, was its motion timely, (c) if so, did plaintiff's attorney violate Rule 11, and/or is plaintiff's attorney liable for sanctions under § 1927, and (d) if so, what is the appropriate sanction.

#### II. FACTS

The plaintiffs brought suit against Bobst Group, Inc. ("Bobst") for negligence seeking recovery for personal injuries suffered by Ismael Hochen and Richard Dufault while they were operating a printing press at Avery Dennison Corp., their place of employment. Bobst's alleged negligence occurred during work they performed on the printing press about a month before the explosion.

The suit was originally filed suit on June 2, 1996 in Middlesex Superior Court and removed to U.S. District Court nine days later. On February 18, 2000, roughly two and half months before trial was set to start, plaintiffs moved to amend the complaint (# 168) in order to add Winterthur, Bobst's insurance carrier, as a direct defendant claiming that Winterthur had violated Massachusetts General Laws chapter 93A. A decision on the motion was postponed in order to see whether plaintiffs would prevail at trial against Bobst. When a directed verdict was granted and judgment entered for Bobst on May 19, 2000, the motion to amend the complaint (# 168) became moot and was denied. On June 9, 2000, Winterthur moved for fees, costs and sanctions ("motion for sanctions") against plaintiffs' attorney Paul Nyer ("Nyer or Mr. Nyer") (# 268) under Rule 11 and § 1927. Nyer filed a brief in opposition (# 277) on June 30, 2000 to which Winterthur responded (# 278) on July 12, 2000.

The facts regarding settlement negotiations are generally undisputed though each side characterizes the events differently. On June 22, 1999, both sides participated in a mediation which included representatives from Winterthur. The plaintiffs rejected Winterthur's final offer of $475,000 at the mediation. Nyer felt he could not accept the offer because Winterthur did not apportion the settlement among the individual defendants and also with the workers' compensation liens at $417,000, the settlement would be virtually unprofitable.[2] The parties met again for settlement discussions on September 22, 1999. Although it is not clear what offer Winterthur presented at that time, Nyer's affidavit states Winterthur refused to put the offer in writing or apportion it among the individual plaintiffs. Winterthur, on the other hand, felt that the plaintiffs were never able to show that liability was reasonably clear and therefore only offered a settlement that reflected the estimated costs of pursuing the litigation to its conclusion.[3]

After the September 22, 1999 meeting, Nyer sent a 93A demand letter to Winterthur ostensibly because he felt that Winterthur's failure to apportion the offer or to put

---

**2.** *See* Paragraph 4 of Nyer's affidavit (Exh. A to # 277).

**3.** *See* Page 8 of Winterthur's Response to Attorney Nyer's Opposition (# 278).

it in writing violated chapter 93A and Mass. Gen.L. c. 176D.[4] Winterthur, who in the meantime retained outside counsel, responded to the chapter 93A demand letter by making an offer of $550,000 but asserting its belief that plaintiffs had yet to show that liability was reasonably clear.[5] Eventually Winterthur did apportion $110,000 to each plaintiff as part of the $550,000 offer, but Nyer and the workers' compensation carrier rejected it.[6]

Winterthur contends in its briefs that it never had a duty to make an offer because plaintiffs could never show any of the representatives from Bobst or Winterthur that liability was reasonably clear. Since it had no duty to make a settlement offer, any offer it made could not violate Mass.Gen.L. c. 176D or 93A. Therefore it is argued that the chapter 93A claim, not based on law or fact, was frivolous and used solely for the improper purpose of forcing Winterthur into a higher settlement offer.

Nyer, on the other hand, asserts in his opposition to the motion for sanctions that it was understood that liability was reasonably clear or else Winterthur would never have made the settlement offers that it made. On this basis, Winterthur's apparent refusal to apportion the settlement offer to the individual plaintiffs, and the fact that the offer was barely above the amount of the workers' compensation lien, purportedly amounted to unfair settlement practices. Consequently in Nyer's view, the chapter 93A claim was justifiable.

### III. DISCUSSION
#### A. DOES WINTERTHUR HAVE STANDING TO BRING THE MOTION?

Speaking of Rule 11, the Supreme Court has written that "although the Rule must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy, any interpretation must give effect to the Rule's central goal of deterrence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). In light of this goal, which equally applies to

§ 1927, the question is whether Winterthur as a non-party has standing to bring a motion for sanctions.

Generally, non-parties to a case in litigation cannot bring motions for sanctions. Rule 11 does not provide an independent basis for bringing a suit seeking sanctions. *Port Drum Co. v. Umphrey*, 852 F.2d 148, 149 (5 Cir., 1988). Nor is a non-party permitted to intervene in a case in order to pursue the imposition of Rule 11 sanctions against a party to the litigation. *New York News, Inc. v. Kheel*, 972 F.2d 482, 489 (2 Cir., 1992). *See also Sean Michael Edwards Design, Inc. v. Pyramid Designs*, 1999 WL 1018072 (S.D.N.Y., 1999). Similarly, an attorney for a party in a case cannot bring a motion for Rule 11 sanctions on his or her own behalf (as opposed to on behalf of his or her client-party). *Westlake North Property Owners Assoc. v. City of Thousand Oaks*, 915 F.2d 1301, 1307 (9 Cir., 1990).

However, "parties to an action and certain other participants have standing to move for sanctions under Rule 11." *Sean Michael Edwards Design, Inc.*, 1999 WL 1018072 at *1 citing *Westlake North*, 915 F.2d at 1307. In the case of *Greenberg v. Sala*, 822 F.2d 882 (9 Cir., 1987), the Ninth Circuit held that persons named in a Complaint but never served had standing to seek Rule 11 sanctions for the filing of a frivolous complaint against them. The Court reasoned:

The defendants were named as defendants in the complaint, however, the complaint was not served upon any of them ... The other defendants ... learned about the filing of the complaint from a newspaper article. The filing of the complaint, nonetheless, caused the defendants to incur costs and attorney fees. They also claim to have suffered additional damage. Moreover, the filing of the complaint necessarily triggered the expenditure of court resources. Frivolous complaints filed in violation of Rule 11 "sap the time of judges, forcing parties with substantial disputes to wait in a longer queue...." *Sza-*

4. *See* Paragraphs 9 and 10 of Nyer's affidavit (Exh. A to # 277).

5. *See* Winterthur's letter dated November 10, 1999 (Exh. C to # 277).

6. *See* Paragraphs 12 and 13 of Nyer's affidavit (Exh. A to # 277).

bo Food Service [*Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir.1987)], The defendants had standing to seek Rule 11 sanctions in the district court . . .

*Greenberg,* 822 F.2d at 885.

In support of this conclusion, the Ninth Circuit cited the case of *Westmoreland v. CBS, Inc.,* 770 F.2d 1168 (D.C.Cir., 1985) in which the Court allowed a non-party deponent to bring a Rule 11 motion against an attorney who improperly attempted to have the court find the deponent in contempt. In that case, former CIA Director Richard Helms, a non-party to the litigation, was subpoenaed to appear for a deposition. He appeared but refused to consent to have the deposition videotaped. Prior permission from the Court to tape the deposition had not been obtained. Nonetheless, CBS sought to have Helms held in contempt for refusing to permit the deposition to be videotaped. Helms successfully defended against the motion that he be held in contempt, and he sought Rule 11 sanctions against CBS. The District Judge denied the motion and Helms appealed. *Westmoreland,* 770 F.2d at 1171–72.

The Court of Appeals held that it was error for the District Court to have denied Helms' Rule 11 motion. *Id.* at 1173. In so doing, it is clear that the Court implicitly found that Helms, a non-party, had standing to prosecute the Rule 11 motion.

The Second Circuit in *New York News, Inc.* noted the *Greenberg* and *Westmoreland* precedents but declined to decide whether or not it agreed with the holding that on the facts of those cases, the non-parties could seek Rule 11 sanctions. *New York News, Inc.,* 972 F.2d at 488–9. Instead, the Court distinguished the *Westmoreland,* case on the ground that ". . . a non-party witness defending against a petition for civil contempt is in a position different from other non-parties" for the reasons, among others, that ". . . the non-party witness in the action can appeal from an adjudication of contempt . . .". *New*

York News, Inc. at 488 citing *Westmoreland. Greenberg* was distinguished because the defendants were named in the complaint which might be sufficient even though they were never served. *Id.* at 489.

■ While perhaps not exact, there is a line which can be drawn from these cases. Those non-parties who are brought in or are attempted to be brought into litigation involuntarily by one process or another have standing. Other nonparties do not. Thus, Helms in the *Westmoreland* case and the defendants who were named but not served in the *Greenberg* case have standing. But one who attempts to enter the litigation voluntarily by seeking to intervene for the purpose of seeking Rule 11 sanctions, as was attempted in the *New York News, Inc.* case, does not have standing. Similarly, one who seeks to bring a new action based on Rule 11 violations occurring in earlier litigation to which that person was not a party, as in the *Port Drum Company* case, does not have standing. And an attorney who is voluntarily representing a party, as in the *Westlake North Property Owners Association* case, does not have standing to bring Rule 11 sanctions on his or her own behalf.

■ With this distinction in mind, it is manifest that Winterthur has standing to seek Rule 11 sanctions in the instant matter. Winterthur never sought to become a party to this litigation. Rather, the plaintiffs through Mr. Nyer attempted to make Winterthur an unwilling participant in the litigation. In resisting this attempt, Winterthur had to incur costs and attorneys fees.[7] If Mr. Nyer's motion to add them as a party was frivolous or made for an improper purpose, Winterthur is entitled to the imposition of Rule 11 sanctions.

Permitting the imposition of such sanctions in a situation such as this would clearly further the policy behind the enactment of Rule 11 which the First Circuit described as follows:

7. *See* L.R. 15.1 (D.Mass) which requires a motion to amend a pleading to add a party be served on the person or entity sought to be added as a party ten days before the motion is actually filed. Presumably one of the purposes of this rule is to

permit the person or entity sufficient advance notice to file an opposition to the motion and to be heard in opposition, thereby requiring the person or entity to expend resources in the litigation.

The purpose of Rule 11 is deter dilatory and abusive tactics in litigation by lessening frivolous claims or defenses. *See* Fed. R.Civ.P. 11, advisory notes. To achieve these goals, Rule 11 requires attorneys to take responsibility for the claims and defenses they represent ... to assure that the claims, defenses and positions represented by them are well-grounded in both law and fact and are not intended to serve an improper purpose, such as harassment or delay.

*Cruz v. Savage*, 896 F.2d 626, 630 (1 Cir., 1990).

### B. WAS THE MOTION FOR SANCTIONS TIMELY?

■ Citing *General Motors Acceptance Corp. v. Bates*, 954 F.2d 1081 (5 Cir., 1992), Nyer argues that Winterthur's motion was not timely and accordingly should be denied. In *GMAC*, the court denied a motion for sanctions that was made thirty-three months after the allegedly sanctionable conduct, ruling that such motions should be made promptly. In this case, Winterthur made its motion for sanctions less than four months after the motion to amend was filed and less than one month after judgment was entered for Bobst. The delay in this case was not unreasonable and, therefore, the motion for sanctions will not be denied on this basis. The Court shall now turn to the merits of the motion.

### C. APPLICABLE LAW

#### 1. *Rule 11*

As mentioned above, Rule 11 serves to deter parties from asserting claims or defenses that are frivolous or brought for an improper purpose. The applicable version of the rule, enacted in 1993, provides, in pertinent part:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

3) the allegations and other factual contentions have evidentiary support or, ... are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery ...

Rule 11(b), Fed.R.Civ.P.

■ A court must use an objective standard of "reasonableness under the circumstances" in determining whether there has been compliance with Rule 11. *Cruz*, 896 F.2d at 631 (citations omitted). To impose Rule 11 sanctions it is not necessary to find that an attorney acted in bad faith. *Id.* "A violation of Rule 11, as revised, might be caused by inexperience, incompetence, willfulness, or deliberate choice." *Id.* But as the Advisory Committee Notes to the 1983 revision state:

The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.

Essentially, Rule 11 "... require[s] a litigant to 'stop and think' before initially making legal or factual contentions." Advisory Committee Notes (1993 rev.). Under Rule 11(c) as amended in 1993, sanctions are no longer mandatory, even in the event that a violation is found, as they were under 1983 version of the Rule.

#### 2. *Title 28 U.S.C. § 1927*

Similar to Rule 11, Title 28 U.S.C. § 1927 serves to prevent abuses of the litigation process. The statute provides:

Any attorney or other person admitted to conduct cases in any court of the United

States or any territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Title 28 U.S.C. § 1927.

 In the First Circuit, the standard by which a court assesses whether § 1927 has been violated is objective in nature and does not require a finding of subjective bad faith. *Cruz*, 896 F.2d at 631–32. Under the statute, there is only a violation if counsel's conduct has been unreasonable or vexatious, in the sense of being harassing or annoying and thus amounts to more than just negligence, inadvertence or incompetence. *Cruz* at 632.

### D. DID THE MOTION TO AMEND VIOLATE RULE 11?

 To succeed on a claim that an insurance company has violated Mass.Gen.L. c. 176D, a plaintiff must prove that the company failed to "effectuate [a] prompt, fair and equitable settlement of [a] claim[ ] in which liability has become reasonably clear." Mass.Gen.L. c. 176D § 3(9)(f). In order to determine whether a defendant's liability is "reasonably clear", one must employ an objective test which "calls upon the fact finder to determine whether a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason, that the insurer was liable to the plaintiff." *Demeo v. State Farm Mut. Auto. Ins. Co.*, 38 Mass.App.Ct. 955, 956–57, 649 N.E.2d 803, 804 (1995). However, if a reasonable person would conclude that the chances were approximately equal that the defendant would be found not liable, liability is not reasonably clear. *Demeo*, 38 Mass.App.Ct. at 957, 649 N.E.2d at 805.

 Facing a Rule 11 motion, Nyer had the burden to show that a reasonable attorney in the circumstances in which he found himself at the time he filed the motion to amend would have believed that Bobst's liability was reasonably clear. I find that a reasonable attorney would not have come to

that conclusion. A reasonable attorney, viewing all of the evidence, would have concluded that chances of the plaintiffs' prevailing were at best 50–50. There was a substantial issue as to whether the accident, which occurred weeks after Bobst technicians worked on the machine, was caused by anything Bobst did or failed to do. This issue was manifest, and it was by no means clear that plaintiffs would prevail in proving that it did.

Nyer asserted that it was understood that liability was reasonably clear because Winterthur made a substantial monetary offer to settle the case. This is a bootstraps argument. First, Winterthur in no ambiguous terms stated in its November 10, 1999 letter that the offer was based merely on the "economics of defense". Second, the relevant evidence to consider when determining whether liability was reasonably clear is not settlement offers made by defense counsel but rather facts concerning the actual underlying claim.

Further, if it were the law that any offer of settlement made by a defendant had the effect of establishing that liability was reasonably clear, defendants would be put in the untenable position of risking a 93A suit if they made an offer of settlement which the plaintiff deemed too low. Obviously, such a rule would discourage settlements of cases in which liability is not clear but it is nonetheless in the defendant's interest to settle the case for a myriad of other reasons, not the least of which might be to avoid the costs of litigation.

It is also uncertain how Nyer intended to show that Winterthur's settlement negotiations violated chapter 176D. Nyer never set out a legal standard which would indicate how Winterthur's failure to apportion its offers among the plaintiffs was an unfair settlement practice. No cases are cited which would establish a duty to apportion. Merely declaring that the failure to apportion was in bad faith does not make it so.

In short, no reasonable attorney is Nyer's position when he filed the motion to amend would have concluded that the chances of success before a reasonable jury on liability were so strong as to render liability "reason-

ably clear." I find that in filing the motion to amend, Nyer violated Rule 11(b)(2) in that, on the facts known by him at the time, the 93A claim was not warranted by existing law. I also find that he violated Rule 11(b)(3) because his allegation and factual contention that liability was reasonably clear lacked evidentiary support.

I further find that the inference is inescapable that Nyer filed the motion for an improper purpose, i.e., to force Winterthur to settle for more in order to avoid litigating a frivolous claim; in so doing, Nyer violated Rule 11(b)(1). Winterthur had said that it was offering to settle on the terms which it did in order to avoid the costs of litigation. Adding a baseless claim against Winterthur was motivated by a desire to increase the potential costs of litigation and thus force Bobst to settle at a higher figure.

### E. DID THE MOTION TO AMEND VIOLATE TITLE 28 U.S.C. § 1927?

Although Nyer's decision to move to amend the complaint in order to add Winterthur as a defendant violated Rule 11, it is not as clear that his actions were vexatious so as to multiply the proceedings. Winterthur argues that Nyer continuously delayed the litigation which was supposed to be disposed of in 1997. This may or not be true. However, Winterthur does not have standing to allege that Nyer unduly multiplied the proceedings as against Bobst. Rather, Winterthur can complain only about any multiplication of the proceedings as against it. Because I have found a Rule 11 violation, and the remedy which I shall afford Winterthur will contain all of the relief they would be entitled to if I found § 1927 violation for the same conduct, I decline to award any sanction pursuant to § 1927.

### IV. FIRST ORDER

Accordingly, it is ORDERED that Winterthur International's Motion, Etc. (# 268) be, and the same hereby is, ALLOWED at this time to the extent that the Court finds that Attorney Nyer violated Rule 11(b)(1)(2)(3) by filing and prosecuting Plaintiff's Motion to Amend (# 168).

### V. THE APPROPRIATE SANCTION

For the Rule 11 violation, I rule that Nyer should pay the costs and reasonable attorneys' fees incurred by Winterthur in opposing the motion to amend and prosecuting the within motion for sanctions. I rule that he shall also be ordered to pay the sum of $1,000 into the Registry of the Court. However, before I enter a final order to this effect, Winterthur shall file and serve, *on or before the close of business on Friday, January 5, 2001,* any affidavits and other materials detailing the attorneys' fees and costs incurred in defending against the motion to amend and prosecuting the motion for sanctions. Attorney Nyer is granted leave to file a response to amounts claimed for costs and/or attorneys' fees *on or before the close of business on Thursday, January 18, 2001.*