# United States Court of Appeals
## For the First Circuit

No. 01-1411

PAUL NYER,

Appellant,

v.

WINTERTHUR INTERNATIONAL,

Appellee.

ISMAR HOCHEN, AS ADMINISTRATOR OF THE ESTATE OF ISMAEL HOCHEN;
RICHARD DUFAULT; CHRISTINE DUFAULT, INDIVIDUALLY AND AS MOTHER AND
NEXT FRIEND OF RICHARD DUFAULT, JR.; LEAH DUFAULT,

Plaintiffs,

v.

BOBST GROUP, INC.,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Robert B. Collings, U.S. Magistrate Judge]

Before

Torruella, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

Christopher Maffucci, with whom Casner & Edwards, LLP was on
brief, for appellant.
Kimberly M. McCann, with whom Daniel P. Gibson and Gibson &
Behman, P.C. were on brief, for appellee.

**STAHL, <u>Senior Circuit Judge</u>**.  Attorney Paul Nyer ("Nyer")
appeals from an order sanctioning him under Federal Rule of Civil
Procedure 11 for his attempt to bring an unfair trade practices claim
against Winterthur International Insurance Company ("Winterthur") in
connection with Winterthur's defense of a personal injury suit against
its insured.  For the following reasons, we affirm.

## I.

In 1994, Avery Dennison Corp. ("Avery") contracted with Bobst
Group, Inc. ("Bobst") to install and service certain controls and
equipment on Avery's printing press.  On August 2, 1994, an explosion
in the printing press seriously injured two Avery employees, Ismael
Hochen and Richard Dufault.  The two men retained Nyer as their
attorney and filed suit against Bobst in 1996, alleging *inter alia* that
Bobst's negligent maintenance of the presses caused the explosion.
Bobst filed several motions for summary judgment and obtained partial
summary judgment in 1997 on the statute of repose issue and partial
summary judgment in 2000 on Hochen's claims regarding breach of
warranty and failure to warn.[1]  After the summary judgment motions, only
the negligent maintenance issue remained for trial.

---

[1]The merits of the underlying suit are addressed in a
separate opinion issued this day.  <u>See</u> <u>Hochen</u> v. <u>Bobst Group,
Inc.</u>, No. 96-11214 (D. Mass. 2000), *appeal docketed,* No. 00-1841
(1st Cir. March 20, 2001).

On February 18, 2000, approximately two and a half months before the trial was set to begin, the plaintiffs attempted to add Winterthur, Bobst's insurance carrier, as a direct defendant in the lawsuit. In their motion to amend, the plaintiffs alleged that Winterthur had violated Massachusetts General Laws chapter 93A because its negotiation tactics ran afoul of Massachusetts General Law chapter 176D, which regulates insurance companies.[2] The magistrate judge deferred ruling on the motion in order to see whether the plaintiffs would prevail at trial against Bobst.[3] After the magistrate judge directed a verdict in favor of Bobst and entered judgment on May 19, 2000, he denied the motion to amend the complaint as moot. On June 9, 2000, Winterthur filed a motion for attorney fees, costs and sanctions against the plaintiffs' attorney Nyer pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927. Nyer opposed the motion on June 30, 2000, and Winterthur filed its response on July 12, 2000.

In determining whether sanctions were appropriate, the magistrate judge reviewed the history of negotiations between the parties. Plaintiffs began the settlement negotiations by making a demand to settle of $5 million -- $3 million for Hochen and $2 million for Dufault. On June 22, 1999, the plaintiffs, Bobst and

---

[2]See infra note 7 and accompanying text for further explanation of the relationship between chapters 93A and 176D.

[3]The parties consented to proceed before the magistrate judge for trial and entry of judgment pursuant to 28 U.S.C. § 636(c).

representatives from Winterthur participated in a mediation session, during which Winterthur made an offer to settle the case for $475,000. According to Nyer, the plaintiffs rejected the offer because (1) Winterthur did not apportion the settlement among the individual defendants and (2) with the workers' compensation liens at $417,000, the settlement would be virtually unprofitable. The parties met again for settlement discussions on September 22, 1999. Although the record does not include the specifics of any offer allegedly made by Winterthur at that meeting, Nyer claims that Winterthur refused to put its offer in writing and again rejected Nyer's request that it apportion the proposed settlement among the individual plaintiffs.

After this September meeting, Nyer sent Winterthur a 93A demand letter alleging that Winterthur's failure to apportion the offer or put it in writing violated Massachusetts General Law chapters 93A and 176D. After retaining outside counsel, Winterthur responded to the letter by offering $550,000 to resolve the case, although still insisting that the plaintiffs had not demonstrated that liability was reasonably clear. Shortly thereafter, Winterthur presented a proposed apportionment of the offer, allocating $110,000 to each of the five plaintiffs.[4] Nyer and the workers' compensation carrier, however, rejected this offer.

---

[4]The three additional plaintiffs named in the lawsuit were family members of Richard Dufault.

-4-

In its motion for sanctions, Winterthur claimed that it was under no obligation to make a settlement offer to the plaintiffs under chapter 176D because they could not show that Bobst's liability was reasonably clear. As it had no duty even to negotiate, Winterthur argued, it could not be found liable for violating the insurance regulations laid out in chapter 176D or unfair trade practices provision in chapter 93A. Therefore, Winterthur concluded, the 93A claim that the plaintiffs attempted to assert against it was frivolous and made only for the improper purpose of forcing Winterthur to offer a higher settlement figure.

In his defense, Nyer claimed that the parties understood that Bobst's liability was reasonably clear, as reflected by the size of Winterthur's settlement offers. Therefore, in Nyer's view, Winterthur's refusal to apportion the settlement offer to the individual plaintiffs and the fact that the offer was barely above the amount of the workers' compensation lien constituted an unfair settlement practice. Consequently, Nyer insisted that his attempt to assert a 93A claim against Winterthur should not be sanctionable.

Before reaching the merits of Winterthur's motion, the magistrate judge rejected Nyer's arguments that Winterthur did not have standing to seek sanctions and that Winterthur's motion was untimely. He then determined that there was no basis for a 93A claim against Winterthur in light of relevant Massachusetts law, and imposed

sanctions pursuant to Rule 11, along with attorneys' fees and costs.[5]

Hochen v. Bobst Group Inc., 198 F.R.D. 11 (D. Mass. 2000).  Nyer timely appealed.

---

[5]Although the magistrate judge concluded that Nyer had violated Rule 11, he found it "not as clear that [Nyer's] actions were vexatious so as to multiply the proceedings," in violation of § 1927.  Hochen, 198 F.R.D. at 18.  Because Rule 11 provided a sufficient basis to award Winterthur with all of the relief it sought, the magistrate judge found it unnecessary to reach the issue of whether Nyer's conduct infringed § 1927.  Id.

## A. Standing

Before assessing the propriety of the magistrate judge's ruling, we must first inquire as to whether Winterthur had standing to seek sanctions under Rule 11.  We review issues of standing de novo. New Hampshire Right to Life Political Action Comm. v. Gardner, 99 F.3d 8, 12 (1st Cir. 1996).

As a general rule, non-parties to a case may not bring a motion for sanctions pursuant to Rule 11.  New York News, Inc., v. Kheel, 972 F.2d 482, 488 (2d Cir. 1992).  In limited circumstances, however, a non-party may have standing to move for Rule 11 sanctions. For example, in Westmoreland v. CBS, Inc., 770 F.2d 1168 (D.C. Cir. 1985), a non-party witness was permitted to bring a Rule 11 motion stemming from defense counsel's commencement of contempt proceedings against him.  On the other hand, individuals that are either explicitly discussed in a complaint or entities that are indirectly implicated by a complaint's allegations may not intervene in the litigation for the sole purpose of seeking Rule 11 sanctions.  See New York News, Inc., 972 F.2d at 488-89 (individual); Port Drum Co. v. Umphrey, 852 F.2d 148 (5th Cir. 1988) (corporate entity).

In Greenberg v. Sala, 822 F.2d 882 (9th Cir. 1987), the Ninth Circuit ruled that individuals who had been named in a frivolous complaint could seek Rule 11 sanctions, even though they had never actually become official parties to the litigation due to lack of

service.  In finding that the would-be defendants had standing, the court noted that "the filing of the complaint . . . caused the defendants to incur costs and attorney fees. . . . Moreover, the filing of the complaint necessarily triggered the expenditure of court resources."  Id. at 885.

We consider this case to be closely analogous to Greenburg. Winterthur was never formally made a party to the litigation, but this was due to the fact that the magistrate judge decided to reserve judgment on the motion to amend plaintiffs' complaint until the underlying issues regarding Bobst's liability were resolved. Furthermore, although Winterthur was never required to refute the chapter 93A allegations contained in the amended complaint, Winterthur was forced to prepare a possible defense against the charge of unfair trade practices.  In this sense, Winterthur was similarly situated to the non-party witness in Westmoreland who had to defend himself against a petition for civil contempt arising out of his refusal to allow his deposition to be videotaped.  Therefore, we find that, even under the reasoning of New York News, Inc., Winterthur qualifies as one of the types of non-parties that may bring a motion for Rule 11 sanctions. See 972 F.2d at 488-89 (distinguishing Westmoreland and Greenberg). Accordingly, we find that Winterthur has standing to file a motion for Rule 11 sanctions.

**B.  Timeliness**

-8-

One additional issue remains before we can turn to the merits of the Rule 11 determination. Nyer has not sought review of the district court's ruling that Winterthur's motion for sanctions was timely filed. In his appeal, however, Nyer alleges for the first time that Winterthur failed to comply with the "safe harbor" provision of Rule 11, which requires a movant to wait twenty-one days after serving a motion for sanctions on opposing counsel before filing the motion with the court. Fed. R. Civ. P. 11(c)(1)(A). This provision is designed to allow an attorney to correct his error before a party commences Rule 11 proceedings. In this case, however, we need not decide whether there was any failure to comply with the "safe harbor" provision because Nyer did not present this issue to the magistrate judge in his opposition to the motion for sanctions. "If any principle is firmly established in this circuit, it is that, in the absence of excusatory circumstances -- and none are apparent here -- arguments not seasonably raised in the district court cannot be raised for the first time on appeal." Corrada Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 44 (1st Cir. 2001).[6]

---

[6]We note, however, that Nyer filed his motion to amend on February 18, 2000 and the motion was dismissed as moot on May 19, 2000. Interestingly, Winterthur did not file its motion for fees and sanctions until June 9, 2000, i.e., twenty one days after the magistrate judge entered judgment and dismissed the motion to amend. Prior to the dismissal, Nyer had approximately three months to reconsider and withdraw the motion to amend but chose not to do so. Once the magistrate judge dismissed the motion as moot, the purposes of the safe harbor provision could no longer be effectuated because Nyer had lost his opportunity to reverse course.

# III.

With those preliminary matters resolved, we now focus on the question of whether sanctions were appropriate in this case. Rule 11 provides for the imposition of sanctions against an attorney who files a pleading, motion or paper that is not "well grounded in fact" or is not "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law," or is "interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Civ. P. 11.

We pause momentarily to offer some clarification as to the proper standard of review in this case. In this circuit, as a general rule, all aspects of a district court's Rule 11 determination are examined under the abuse of discretion standard. See Kale v. Combined Ins. Co. of Am., 861 F.2d 746, 757-58 (1st Cir. 1988). By "all aspects," we refer to both "the legal conclusion of the district court that the facts constitute a violation of the Rule and . . . the appropriateness of the sanction imposed." Figueroa-Ruiz v. Alegria, 905 F.2d 545, 548 n.2 (1st Cir. 1990). As the Supreme Court has instructed, however, "[a] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 405 (1990). Therefore, in order to assess whether the magistrate judge acted within his discretion in imposing

sanctions, we must discern whether he properly interpreted the relevant Massachusetts authorities regarding liability under chapters 93A and 176D.

Under state law, insurance companies in Massachusetts have an obligation to abstain from "unfair claim settlement practices," such as "failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear. . . ." Mass. Gen. L. ch. 176D § 3(9)(f).[7] In order to determine whether liability is "reasonably clear," the fact finder must determine "whether a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason, that the insurer was liable to the plaintiff." Demeo v. State Farm Mut. Auto. Ins. Co., 38 Mass. App. Ct. 955, 956-57, 649 N.E. 2d 803, 804 (1995).

For the purposes of assessing whether Nyer's attempt to bring an unfair trade practices claim against Winterthur violated Rule 11, the court must focus on whether Nyer had evidentiary support for his claim and/or whether his accusations were "warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal

---

[7]Chapter 93A of Massachusetts law also protects consumers from unfair trade practices. Mass. Gen. L. ch. 93A § 2(a) ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."). When drafted, neither chapter 93A nor chapter 176D provided any avenue for the private enforcement of these protections. In 1979, however, the legislature amended chapter 93A, granting consumers a private cause of action against insurers who violate chapter 176D. Id. § 9(1). See generally Thomas P. Billings, The Massachusetts Law of Unfair Insurance Settlement Practices, 76 Mass. L. Rev. 55 (June 1991).

of existing law . . . ." Fed. R. Civ. P. 11(b)(2)-(3). After reviewing the history of negotiations between the parties and examining the underlying personal injury litigation, the magistrate judge determined that no reasonable attorney would have believed that he had any evidence to support a claim that Winterthur failed to negotiate a settlement in good faith on behalf of its insured, whose liability was reasonably clear.

Nyer insists that Winterthur's substantial settlement offer was an implicit acknowledgment that Bobst's liability was "reasonably clear." Yet, as the magistrate judge noted, Winterthur explicitly stated that its settlement proposal represented an amount approximating the estimated cost of defense. This practice is not uncommon. In fact, many cases are settled simply to avoid the uncertainties and costs of going to trial. Under Nyer's view, however, the mere proposal of a settlement offer would serve as an admission by the insurer that liability is reasonably clear. Not only is this interpretation of chapter 176D legally erroneous, but it would also produce the highly undesirable effect of drastically reducing the willingness of parties to seek an amicable resolution to their dispute.

The magistrate judge observed that "the relevant evidence to consider when determining whether liability was reasonably clear is not settlement offers made by defense counsel but rather facts concerning the actual underlying claim." Hochen, 198 F.R.D. at 17. The magistrate judge's assessment was that, in light of the significant

-12-

hurdles facing the plaintiffs in the underlying litigation, no reasonable attorney, on these facts, would have had a basis for believing that Bobst's liability was reasonably clear.

In his appeal and in the proceedings below, Nyer has insisted that it was Winterthur's failure to apportion the settlement amount that constituted bad faith on the insurer's part. Nyer offers no authority, however, to support his position that Winterthur was somehow obligated to apportion the sum among the various parties. We are unaware of any Massachusetts law that would impose an apportionment obligation upon Winterthur and counsel has not pointed us to any such authority. Therefore, no attorney, particularly relying on this apportionment argument, could reasonably have believed that the facts of this case could sustain a claim against Winterthur under chapter 93A and 176D. This argument is simply frivolous.

We emphasize that the standard for determining whether an insurance company has violated chapter 176D claim is distinct from the standard for determining whether an attorney has offended Rule 11 by making (or attempting to make) such an allegation. Yet, one cannot assess the latter without a precise understanding of the former. The magistrate judge did not err in his conclusion. Because we agree that the apportionment argument raised by the appellant is totally frivolous, in reviewing the magistrate judge's decision to impose sanctions under the abuse of discretion standard, we find no error

because, "at its core[, the] imposition of sanctions is a judgment call."  <u>Kale</u>, 861 F.2d at 758 (internal quotations omitted).

### IV.

For the foregoing reasons, we affirm the imposition of sanctions under Rule 11 against attorney Nyer.